UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, )<br>)<br>    Plaintiff/Counterclaim )<br>    Defendant, )<br>  v. )<br>)<br>JAMES FOUGERE, SARAH BRODY-ISBILL, )<br>and A BETTER INSURANCE AGENCY, INC., )<br>)<br>    Defendants/ )<br>    Counterclaimants. ) | CIVIL ACTION<br>NO. 16-11652-JGD |

**MEMORANDUM OF DECISION AND ORDER ON
PLANITIFF'S MOTION FOR SUMMARY JUDGMENT
ON COUNT V OF DEFENDANTS' COUNTERCLAIM**

March 26, 2020

DEIN, U.S.M.J.

## I. INTRODUCTION

The defendants/counterclaimants, James Fougere and Sarah Brody-Isbill ("Fougere," "Brody-Isbill," or collectively "defendants"), allege that the plaintiff, Allstate Insurance Co. ("Allstate" or the "plaintiff"), engaged in unfair and deceptive practices in violation of Mass. Gen. Laws ch. 93A (Count V). Fougere and Brody-Isbill were Allstate Exclusive Agents who, prior to their termination, sold Allstate insurance in Massachusetts. As part of a comprehensive summary judgment decision addressing the parties' cross-motions for summary judgment, this court denied without prejudice the plaintiff's motion for summary judgment as to defendants' 93A counterclaim. See Docket No. 164 ("SJ Order"); Allstate Ins. Co. v. Fougere, No. 16-11652-JGD, 2019 WL 4776986 (D. Mass. Sept. 30, 2019). The court allowed the plaintiff to bring a

second motion for summary judgment, if warranted, to address the issue whether the relationship between the plaintiff and defendants constituted "trade or commerce" as required for a 93A claim. Id. at *2. Consequently, this matter is before the court on "Plaintiff's Motion for Summary Judgment on Count V of Defendants' Counterclaim" (Docket No. 175).

Allstate argues that the defendants' 93A claim must be dismissed on two grounds. First, Allstate contends that the relationship between the parties does not constitute "trade or commerce" and that 93A does not apply to their exclusive arrangement. Second, it is Allstate's position that because all of the defendants' other claims against the plaintiff have been dismissed, the defendants have not alleged any grounds upon which their 93A claim can be based. The defendants argue that the relationship between the parties is neither an exclusive agreement nor a private transaction. Rather, they suggest that the parties' relationship is more akin to a franchise relationship, to which 93A has been found to apply. The defendants argue further that their 93A claim is an independent cause of action, and that the dismissal of their other claims does not defeat this count. Finally, the defendants contend that if their 93A claim is dismissed, the plaintiff's 93A claims should be dismissed as well.

For the reasons detailed below, the "Plaintiff's Motion for Summary Judgment on Count V of Defendants' Counterclaim" (Docket No. 175) is ALLOWED. In addition, the plaintiff shall file a status report within 14 days of the date of this Order addressing whether it is pursuing its 93A claims, and its remaining claim for tortious interference with advantageous business relations. If Allstate is pursuing any of the 93A claims, the defendants may file a motion for summary judgment within 21 days of the date of Allstate's status report, limited to the remaining 93A claims.

**STATEMENT OF FACTS**[1]

A detailed statement of the facts in this case can be found in this court's SJ Order. Allstate, 2019 WL 4776986, at *3-9. Only those facts relevant to the issues presently before the court will be detailed below.

Allstate provides "insurance and other financial products and services to individuals and businesses in the State of Massachusetts." (DF ¶ 1). To sell their products, Allstate appoints independent exclusive agents ("EAs"). (DF ¶ 2). On February 1, 2013 and April 1, 2014, Fougere and Brody-Isbill signed, respectively, an "Allstate R3001C Exclusive Agency Agreement." (DF ¶¶ 5-6; PEx. D, E).[2] The terms of the EA Agreement state that Fougere and Brody-Isbill are independent contractors. Allstate, 2019 WL 4776986, at *3; (PEx. D at 1 & PEx. E at 1 ("The relationship between the Company and Agency and its officers, directors, shareholders, members, employees, and other persons working in connection with this Agreement, will be that of an independent contractor for all purposes.")).

The Exclusive Agency Agreement allowed the defendants to set up "agencies" where Fougere and Brody-Isbill were solely responsible for the management of their respective agencies, including the hiring and managing of employees, leasing space, and purchasing computers and other office supplies and equipment. (PRF ¶ 15). Fougere's agency was named

---

[1] Unless otherwise indicated, the facts are derived from the "Statement of Facts in Support of Plaintiff's Memorandum of Law in Support of Its Motion for Summary Judgment" (Docket No. 177) ("PF___"); and the exhibits attached thereto ("PEx. ___"); "Defendants/Counterclaimants' Opposition and Cross-Statement of Facts" (Docket No. 181) ("DF ___"); "Plaintiff's Response to Defendants' Cross-Statement of Facts" (Docket No. 184) ("PRF ___"); and the exhibits attached thereto ("PREx. ___").

[2] The parties are being sued together due to reasons outside the scope of this summary judgment motion.

Local Agents, Inc. and Brody-Isbill's agency was called Worcester County Agents, Inc. <u>Allstate</u>, 2019 WL 4776986, at *3, 5 n.7.

As this court found in connection with the earlier motions for summary judgment, the defendants' EA Agreements meant that they "were not permitted to sell other insurers' products in competition with Allstate." <u>Id.</u> at *15. As this court explained

> The EA Agreement provides . . . that the "Agency will not, either directly or indirectly, solicit, sell, or service insurance of any kind for any other company, agent, or broker, or refer a prospect to another company, agent, or broker, without the prior written approval of the Company." (EA Agreement ¶ I.E). The Contractor Manual, which is part of the EA Agreement (<u>see</u> <u>id.</u> ¶ I.C), provides that as an Exclusive Agent "you may not directly or indirectly solicit, sell or service insurance of any kind for any other company without prior written approval from the Company.... Any involvement in an independent agency's business operation would be prohibited as it would constitute indirect soliciting, selling, or servicing insurance[.]" (PEx. OO at 10). Finally, the EA Agreement provides that "[f]or a period of one year following termination" of the Agreement, neither the Agency nor the Key Person were to "solicit the purchase of products or services in competition with those sold by the Company." (EA Agreement ¶ XVIII.D).

<u>Id.</u> at *4.

Allstate did not own or have any ownership interest in the agencies. (PRF ¶ 14). Instead, the Exclusive Agency Contractor Manual, which the defendants were required to follow, provided that

> As an R3001 Agent, you are not an employee of the Company. You have full control of your time and the right to decide how your agency will be managed. While you may choose to hire agency staff, including an office manage, our primary relationship is with you, as the agent or Key Person. Our communication, agency evaluation and recognition focus is with you, as the agent of Key Person.
>
> The EA program is not designed for absentee owners who maintain a long distance relationship with the agency and Company management. You must remain actively involved in the operation of your agency. The Company entered into an agency relationship with you based on your experience and your ability to provide quality service and sales. If you have formed a corporation or limited

> liability company (LLC) and are under the C (or A) version of the R3001 Agreement, the Key Person requirement ensures that you will be actively involved in the operation of the business. Our expectation is that you will have regular in-person contact with your agency and that you will live within a reasonable distance to your office to allow for active involvement in the agency. We also expect you to be reasonably available in your market to meet with Company representatives to discuss market objectives, your agency's business results, legal compliance, and to learn of new products, services, policies and procedures.

(PRF ¶ 14; DF ¶ 8).

Fougere's and Brody-Isbill's EA Agreements with Allstate were terminated, respectively, on November 19, 2014 and October 5, 2015. (DF ¶¶ 11-12). Allstate contends that the termination was "for cause," and it brought suit against Fougere, Brody-Isbill, and another insurance agency operated by Fougere, named A Better Insurance Agency, Inc. ("ABIA"). Allstate, 2019 WL 4776986, at *1. Allstate alleged, *inter alia*, "that Fougere and Brody-Isbill breached their EA Agreements, and misappropriated confidential and trade secret information, by failing to return customer information and thereafter using that information at ABIA." Id. The defendants brought a multi-count counterclaim against Allstate, alleging breach of the covenant of good faith and fair dealing, violation of Mass. Gen. Laws ch. 175, § 163 for failure to give statutory notice prior to terminating the EA Agreements, and violation of Mass. Gen. Laws ch. 175, § 162F for claiming ownership in the client information that allegedly belonged to them pursuant to that statute. Id. In addition, the defendants alleged that Allstate violated Mass. Gen. Laws ch. 93A in connection with the termination of their Agreements (Count V). Id.

### First Summary Judgment Motions

As noted above, the parties previously filed cross-motions for summary judgment. After much consideration, the court found that there were no disputed facts and entered judgment,

as to liability only, in favor of Allstate on its claims against Fougere and Brody-Isbill for breach of contract (Counts I & V) and misappropriation of trade secrets (Counts II & VI), and in favor of Allstate against Fougere, Brody-Isbill and ABIA on Allstate's claims for violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1839 et seq. ("DTSA") (Counts III, VII & IX). Allstate, 2019 WL 4776986, at *2. Four of the plaintiff's claims were not included in the summary judgment motion: three claims for violation of Mass. Gen. Laws ch. 93A against Fougere, Brody-Isbill and ABIA, respectively (Counts IV, VIII, & X) and a claim for tortious interference with advantageous business relations (Count XI). Id. at *1, n.1.

This court dismissed all of the defendants' remaining counterclaims,[3] with the exception of their claim under 93A, which is the subject of the instant motion. In so doing, this court analyzed the Exclusive Agency Agreement, and determined that neither Mass. Gen. Laws ch. 175, § 163 (which applies to independent insurance agents), nor Mass. Gen. Laws ch. 175, § 162F (which does not apply to exclusive agents) applied to parties' relationship. Allstate, 2019 WL 4776986, at * 11-15.

Relevant to this summary judgment motion, the court denied the plaintiff's motion for summary judgment as to the defendants' 93A counterclaim without prejudice, on the grounds "that it is questionable that Mass. Gen. Laws ch. 93A applies to the parties' contractual arrangement, but for reasons different than those argued by the parties." Id. at *24. Allstate had moved for summary judgment on the grounds that there was no "injury to customers" as Allstate was not a customer of the defendants. Id. at *16. The court found this was too narrow

---

[3] The defendants voluntarily withdrew their claim for wrongful interference with contractual relations (Count IV). (Docket Nos. 119, 136).

[6]

a reading of ch. 93A, as the statute encompasses injury to competitors and other businessmen, in addition to customers. Id. In doing so, the court found that the parties had avoided the more difficult question of whether ch. 93A applies to the EA Agreements, and whether the parties' relationship constituted "trade or commerce." Id. at *17. The court found that consistent with case law, it appears "that ch. 93A may not be available to Fougere or Brody-Isbill, pursuant to their EA Agreements." Id. Therefore, the court informed the parties that it would "allow the plaintiff to move for summary judgment on this claim again, if it believes it to be warranted." Id. at *24. This summary judgment motion followed.

## II. ANALYSIS

### A. Standard of Review - Summary Judgment

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). "A fact is 'material' only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd.,

794 F. Supp. 2d at 275. The opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841-42 (1st Cir. 1993). Accordingly, "the nonmoving party 'may not rest upon mere allegation or denials of his pleading[,]'" but must set forth specific facts showing that there is a genuine issue for trial. Id. at 841 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986)). The court affords "no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal quotation marks and citation omitted). Rather, "[w]here, as here, the nonmovant bears the burden of proof on the dispositive issue, it must point to 'competent evidence' and 'specific facts' to stave off summary judgment." Id. (citation omitted).

### B. The Parties' Relationship Was Not "Trade or Commerce" Under ch. 93A

Mass. Gen. Laws ch. 93A § 2 prohibits, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." This court previously held that,

> The statute is designed to "encourage more equitable behavior in the marketplace[,]" and its protections apply not only to consumers but also "persons engaged in trade or commerce in business transactions with other persons also engaged in trade or commerce." Manning v. Zuckerman, 388 Mass. 8, 12, 444 N.E.2d 1262, 1264-65 (1983). However, the "trade or commerce" requirement has been interpreted to exclude purely private transactions, including "internal employment or intra-enterprise disputes." Weiler v. PorfolioScope, Inc., 469 Mass. 75, 92-93, 12 N.E.3d 354, 369 (2014), and cases cited. Thus, 93A does not apply to someone seeking to sue his or her business partner, or a suit by an employee against his or her employer. See, e.g., Debnam v. FedEx Home Delivery, 766 F.3d 93, 96-97 (1st Cir. 2014) (citing, inter alia,

> Linkage Corp. v. Trustees of Boston Univ., 425 Mass. 1, 23 & n.33, 679 N.E.2d 191 (1997)).
>
> There is case law support for the conclusion that ch. 93A does not apply where, as here, the defendants have an exclusive arrangement with Allstate. Thus, ch. 93A was held not to apply to a situation whereby the plaintiff provided delivery services to just one customer, FedEx, and not to the general public: the result was the same regardless of whether the plaintiff was an employee or independent contractor of FedEx. Debnam, 766 F.3d at 97-98. In Benoit v. Landry, Lyons & Whyte Co., Inc., 31 Mass. App. Ct. 948, 580 N.E.2d 1053 (1991) (rescript), the plaintiff was a licensed real estate salesman who was prohibited by statute "from operating his own real estate business and from receiving payment for his services from anyone except the single broker with whom he or she is affiliated." Id. at 949, 580 N.E.2d 1054. Despite the fact that the plaintiff was an independent contractor, 93A did not apply. Id.; see also Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., No. 14-cv-12047-ADB, 2015 WL 4467064, at *11 (D. Mass. July 20, 2015) (motion to dismiss ch. 93A claim brought by exclusive marketing agent denied where there was nothing in the parties' Exclusive Agency Agreement that prevented the plaintiff "from providing its services to anyone else").

Allstate, 2019 WL 4776986, at *17.

Allstate now argues that the relationship is outside the scope of 'trade or commerce' because Fougere and Brody-Isbill were exclusively Allstate insurance agents and could not sell the same services that they offered to Allstate to the general public. (Docket No. 176 at 6-7). The defendants contest the exclusivity of the relationship, arguing that there are too many contested facts as to the nature of the parties' relationship to resolve this question by summary judgment. (Docket No. 180 at 5). Further, the defendants' assert, "[t]he setting up and managing of an insurance agency to sell Allstate insurance products is more akin to a franchise than an employee/employer relationship." (Id.).

This court will not revisit its ruling that the exclusivity of the parties' relationship meant that the defendants "were not permitted to sell other insurers' products in competition with Allstate." Allstate, 2019 WL 4776986, at *15. This conclusion was reached after an extensive

[9]

analysis of the record, and the defendants have offered no new facts in opposition to the instant motion for summary judgment. The exclusivity of the parties' relationship is determinative of the present claim.

The applicability of ch. 93A is based "'on a fact-specific, case-by-case analysis into the type of relationship that the independent contractor has with the company at issue.'" Debnam, 766 F.3d at 97 (quoting McAdams v. Massachusetts Mut. Life Ins. Co., 391 F.3d 287, 303 (1st Cir. 2014)). Specifically, the critical issue is whether the defendants were "offering [their] . . . services 'generally … for sale to the public in a business transaction.'" Id. (quoting Manning, 388 Mass. at 13, 444 N.E.2d at 1265). In Debnam, the First Circuit ruled that the plaintiff's work was "devoted entirely to providing delivery services to FedEx alone[,]" and, therefore, the parties were not plausibly involved in trade or commerce. Id. at 98. Here, the defendants' insurance sales services were exclusively devoted to Allstate. Therefore, the parties were not engaging in trade or commerce and ch. 93A does not apply. See also Benoit, 31 Mass. App. Ct. at 949, 580 N.E.2d at 1054 (93A does not apply to a salesman who is prohibited from "operating his own real estate business and from receiving payment for his services except the single broker with whom he or she is affiliated.").

The defendants argue, for the first time and without any explanation or supporting caselaw, that their relationship with Allstate was more akin to a franchise. (Docket No. 180 at 5). There is some case law indicating, without discussion, that 93A is applicable to disputes between franchisors and franchisees. See Brennan v. Carvel Corp., 929 F.2d 801, 813-14 (1st Cir. 1991) (court applies 93A to claim by franchisee against franchisor without discussion, but finds no violation); Krumholz v. AJA, LLC, 691 F. Supp. 2d 252, 257 (D. Mass. 2010) (court assumes,

[10]

without discussion, that 93A applies to dispute between franchisee and franchisor, but finds claim time-barred). In the instant case, however, the EA Agreement does not mention 'franchise,' 'franchisee,' or 'franchisor' anywhere, and there is no evidence to support the conclusion that the defendants were to be considered franchisees. Thus, there is no reason to apply franchise law to this dispute.

The only evidence is that the defendants were independent contractors under the terms of their EA Agreements. Allstate, 2019 WL 4776986, at *3. However, a franchisee may be an independent contractor or an employee. See Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 621, 990 N.E.2d 1054, 1066 (2013) (reviewing a franchisee agreement to determine if the plaintiff was an employee or independent contractor); Awuah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80, 84 (D. Mass. 2010) (finding that the defendant failed to establish that the franchisees are independent contractors as opposed to employees). Thus, the fact that the defendants were independent contractors does not make them franchisees. Merely relabeling the relationship will not alter the outcome. See Debnam, 766 F.3d at 97 (applicability of ch. 93A hinges on the nature of the relationship between the parties and not the label of the type of relationship).

Because the parties were not involved in trade or commerce, the plaintiff's motion for summary judgment on Count V is allowed.

### C. **The Defendants Have Failed to State a Claim**

Allstate has also moved for summary judgment on the defendants' 93A claim on the basis that the defendants have failed to state a claim upon which relief can be granted. Thus, Allstate argues that the

> [d]efendants have never provided *any* evidence supporting their allegations that Allstate engaged in any "unfair or deceptive acts" against them even under the admittedly broad scope of Chapter 93A. Rather, the only "unfair or deceptive acts" that Defendants complained of were the same alleged acts that formed the basis of Defendants' other claims[.]

(Docket No. 176 at 9). Allstate argues since those claims have already been either dismissed by the court or voluntarily dismissed by the defendants, the 93A claim must also fail. (Id.). The defendants respond that 93A is a stand-alone claim and that the "[d]efendants should not have to guess why Allstate believes (or not) [d]efendants' Chapter 93A, which is based on a separate legal standard from its other claims, should fail." (Docket No. 180 at 5-6).

It is well established that 93A "is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." Manning, 388 Mass. at 12, 444 N.E.2d at 1265 (internal quotation omitted). Nevertheless, the statute is not limitless, and courts look to, among other things, "(1) whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (and) (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596, 321 N.E.2d 915, 917 (1975)). In the instant case, the crossclaim asserts only that Allstate "engaged in unfair and deceptive practices." (Docket No. 22 at 29). Not only does the claim lack sufficient specificity to enable to Allstate to defend against the claim, but the underlying conduct about which the defendants complain has been ruled by this court to be lawful. Therefore, the defendants have

failed to allege conduct that rises to the level of a 93A claim, and the motion for summary judgment should be allowed on this basis as well.

In connection with the prior summary judgment motions, the defendants described their 93A claim as being based on the following conduct:

> The entire manner in which Allstate has engaged defendants has been duplicitous and in bad faith. From terminating defendants' agreements because Mr. Fougere raised valid concerns about overcharging customers and violations of Massachusetts insurance law to sending threatening letters asserting false trade secrets claims as a means to keep defendants from competing against Allstate. Also the terminating of Ms. Brody-Isbill's agency agreement, along with other acts, as a means to retaliate against Mr. Fougere.

Allstate, 2019 WL 4776986, at *15 (citing Docket No. 137 at 20). In connection with the earlier motions for summary judgment, this court ruled that "apparently recognizing that the undefined scope of the defendants' ch. 93A claim makes moving for summary judgment on the merits difficult, Allstate has limited its motion to an argument that it is entitled to summary judgment because the defendants have failed to demonstrate or allege any 'injury to consumers'[.]" Id. at *16. In the instant motion for summary judgment, however, Allstate argues that since all of the underlying conduct about which the defendants complain have been found to be lawful in this court's SJ Order, the defendants have failed to state a claim. (See Docket No. 176 at 8-9). The defendants have done nothing to further define the conduct on which the 93A claim is based. Since this court has found that Allstate acted lawfully in the manner in which it treated the defendants, it is entitled to summary judgment on this claim.

For example, but without limitation, this court has concluded that Allstate did not breach the EA Agreements, and that the customer lists belonged to Allstate. Consequently, Allstate did falsely accuse the defendants of misappropriating trade secrets. This court also found that the

defendants were not entitled to the termination notices and other provisions of the Massachusetts statutes on which the defendants relied. The defendants have not alleged any wrongful conduct on the part of Allstate that rises to the level of a violation of ch. 93A.

Consequently, the defendants have failed to state a claim for violation of Mass. Gen. Laws ch. 93A even assuming, *arguendo*, that the statute applies to the parties' relationship. For this additional reason as well, Allstate's motion for summary judgment is allowed.

### III. Conclusion

For the reasons detailed herein, the plaintiff's summary judgment motion (Docket No. 175) is **ALLOWED**. In addition, the plaintiff shall file a status report within 14 days of the date of this Order addressing whether it is pursuing its 93A claims, and its remaining claim for tortious interference with advantageous business relations. If Allstate is pursuing any of the 93A claims, the defendants may file a motion for summary judgment within 21 days of the date of Allstate's status report, limited to the remaining 93A claims.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge