UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff/Counterclaim | ) | |
| Defendant, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 16-11652-JGD |
| JAMES FOUGERE, SARAH BRODY-ISBILL, | ) | |
| and A BETTER INSURANCE AGENCY, INC., | ) | |
| | ) | |
| Defendants/ | ) | |
| Counterclaimants. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON
## PLAINTIFF'S MOTION FOR ENTRY OF A PERMANENT INJUNCTION

January 21, 2022

DEIN, U.S.M.J.

### I. INTRODUCTION

This matter is before the court on "Plaintiff's Motion for Entry of a Permanent Injunction" ("Motion") (Docket No. 280). The defendants oppose the Motion and contend that an evidentiary hearing is necessary before the court can issue such an injunction. See "Defendants' Opposition to Plaintiff's Motion for Entry of a Permanent Injunction" ("Opp.") (Docket No. 281). For the reasons detailed herein, the court finds that the plaintiff is entitled to injunctive relief and that no further evidentiary hearing is needed as all necessary facts have been established in connection with the parties' cross-motions for summary judgment. The Motion is ALLOWED and a permanent injunction shall be issued as set forth herein.

## II. **PROCEDURAL BACKGROUND**

The plaintiff, Allstate Insurance Company ("Allstate"), brought this action against its former Exclusive Agents, James Fougere and Sarah Brody-Isbill, and subsequently added an insurance agency formed by Fougere, A Better Insurance Agency, Inc. ("ABIA") as a defendant. Fougere and Brody-Isbill sold Allstate insurance pursuant to Exclusive Agency Agreements ("EA Agreement") with Allstate.  By this action Allstate contends that Fougere and Brody-Isbill breached their EA Agreements, and misappropriated confidential and trade secret information, by failing to return customer information when their relationships with Allstate terminated, and thereafter using that information at ABIA.  The defendants denied any wrongdoing and counterclaimed, alleging that the information at issue belonged to them and was being wrongfully claimed by Allstate, and that Allstate had failed to give them proper notice before terminating their EA Agreements.

Simultaneously with filing the Complaint on August 15, 2016, Allstate filed an "Emergency Motion for Entry of Temporary Restraining Order" seeking a temporary restraining order ("TRO") enjoining "Fougere and Brody-Isbill from using Allstate confidential information, and [compelling] Fougere and Brody-Isbill to account for and return all Allstate confidential information in their custody, possession, or control to Allstate."  (Docket No. 4).  The motion for a TRO was allowed by the court the same day, and the parties were ordered to report to the court whether a hearing was needed or if they could reach an agreement.  (Docket No. 9). Allstate filed an Amended Complaint ("AC") on August 25, 2016, adding ABIA as a defendant. (Docket No. 11).  On October 7, 2016, the parties filed a Joint Motion seeking the entry of an agreed upon preliminary injunction and addressing various scheduling and discovery matters.

(Docket No. 13).  On November 22, 2016, the Court entered a "Stipulation and Preliminary

Injunction Order."  (Docket No. 14).  In relevant part, the preliminary injunction provides:

> 1.  Until further order of Court, Defendants, and the employees and/or insurance agents
> of ABIA are enjoined from, directly or indirectly, accessing, using, possessing, or having
> access to Allstate Confidential Information.
>                                      . . . .
> 3.  Until further order of Court, Defendants, and the employees and/or insurance agents
> of ABIA, are enjoined from using and/or accessing the following documents on ABIA's
> and/or Fougere's databases and/or servers:
>
> >     a.     TU Framingham
> >     b.     TU Auburn
>
> . . . .

(Id. at 2).  This preliminary injunction remains in effect.

On September 30, 2019, the Court issued its "Memorandum of Decision and Order on

Cross-Motions for Summary Judgment" ("SJ Order") (Docket No. 164), ruling that two

spreadsheets in the defendants' possession, known as the "TU Framingham" and "TU Auburn"

spreadsheets, and the information contained therein, "are confidential and trade secret

information belong[ing] to Allstate" and "that Fougere and Brody-Isbill breached their contract

by failing to return this information to Allstate, and by using this information at ABIA, and

misappropriated Allstate's trade secrets for the same reasons."  (SJ Order at 4 ¶ 3).  While the

allegations of Allstate's complaint contained broader claims of misappropriated information,

the summary judgment ruling was limited to the two spreadsheets and the information

contained therein.  (Id.)  In addition, the court's rulings were limited to liability only, leaving the

issue of damages, and some remaining claims, for trial.

As a result of this summary judgment ruling, a subsequent ruling on another motion by

Allstate for partial summary judgment (Docket No. 195) and actions by the parties (see Docket

[3]

Nos. 164 at 3 n.2; 197), the following was the status of the claims and counterclaims as of the time the matter was set for trial on June 15, 2020.  (Docket No. 174).

**Allstate's Amended Complaint**

| | | |
|---|---|---|
| Count I | Breach of contract vs. Fougere | Judgment for Allstate on liability only |
| Count II | Misappropriation of trade secrets vs. Fougere | Judgment for Allstate on liability only |
| Count III | DTSA[1] vs. Fougere | Judgment for Allstate on liability only |
| Count IV | Violation M.G.L. c. 93A vs. Fougere | Withdrawn by Allstate |
| Count V | Breach of contract vs. Brody-Isbill | Judgment for Allstate on liability only |
| Count VI | Misappropriation of trade secrets vs. Brody-Isbill | Judgment for Allstate on liability only |
| Count VII | DTSA vs. Brody-Isbill | Judgment for Allstate on liability only |
| Count VIII | M.G.L. c. 93A vs. Brody-Isbill | Withdrawn by Allstate |
| Count IX | DTSA vs. ABIA | Judgment for Allstate on liability only |
| Count X | M.G.L. c. 93A vs. ABIA | Withdrawn by Allstate |
| Count XI | Interference with advantageous Business Relations vs. ABIA | Ready for trial |

In addition, at trial Allstate intended to seek multiple damages under the DTSA for willful and wanton conduct.  (Docket No. 197).

**Defendants' Counterclaims**

| | | |
|---|---|---|
| Count I | Breach of covenant of good faith and fair dealing | SJ for Allstate/Dismissed |
| Count II | Violation of M.G.L. c. 175, § 163 | SJ for Allstate/Dismissed |

---

[1] Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1839 et seq.

| Count III | Violation of M.G.L. c. 175, § 162F | SJ for Allstate/Dismissed |
| Count IV | Interference with contractual relations | Withdrawn by Defendants |
| Count V | M.G.L. c. 93A | SJ for Allstate/Dismissed |

Trial of this matter was continued several times due to the difficulty of holding in-person jury trials during the COVID-19 pandemic.  The final trial date was September 20, 2021.  (Docket No. 255).  On August 25, 2021, Allstate filed a "Motion for an Award of Attorneys' Fees and Costs and For Leave to Submit a Fee Petition."  (Docket No. 262).  Therein, Allstate asserted that it was entitled to nominal damages and "reasonable attorneys' fees and costs incurred in prosecuting its breach of contract claims against Defendants James Fougere ('Fougere') and Sarah Brody-Isbill ('Brody-Isbill') (collectively 'Defendants') and defending against Defendants' counterclaims in this matter[.]"  (Id. at 1.)  Therein, Allstate stated that if it was permitted to file a petition for fees on this basis, it intended "to voluntarily dismiss any remaining claim for damages on its breach of contract and trade secret misappropriation claims, dismiss its claims for a willful and wanton finding, and dismiss it's tortious interference claim."  (Id. at 1 n.1.)

A hearing was held before this Court on September 1, 2021.  At that time, the parties agreed that Allstate would file a fee petition in connection with its breach of contract claims and defense of the counterclaims, and that all of Allstate's other claims would be dismissed.  In addition, Allstate made it clear that it would be seeking a permanent injunction.  (See Transcript ("Tr.") Docket 278 at 5, 10).  The court therefore canceled the jury trial.  (See Docket No. 276).  In addition, the court requested that the parties file, jointly if possible or otherwise separately, a proposed form of judgment.  (Tr. at 12-13).

On October 15, 2021, Allstate filed its "Motion for Attorney Fees and Costs" (Docket No. 270), which is presently pending before this court.  On the same day, Allstate and the defendants filed proposed judgments.  (Docket Nos. 271, 273).  Neither of the parties mentioned a permanent injunction in their proposed orders.  Briefing on the request for attorneys' fees was completed on December 1, 2021.  (Docket No. 275).  On December 15, 2021, Allstate filed the "Motion for Entry of a Permanent Injunction" ("Motion") (Docket No. 280), which is presently before the court.  Therein, Allstate contends that "[e]very requirement for a permanent injunction in this case has already been found by this Court as a matter of law." (Id. at 1).  In opposing the Motion, the defendants contend that Allstate waived its claim for a permanent injunction by not including it in its proposed judgment and by requesting nominal damages on its breach of contract claims.  The defendants further argue that the court cannot enter a permanent injunction without an evidentiary trial or hearing.[2]  The defendants' arguments are without merit.

### III.  THE REQUEST FOR A PERMANENT INJUNCTION WAS NOT WAIVED

The defendants argue that Allstate waived its claim for a permanent injunction by not including it in its proposed judgment.  (Opp. at 1).  This court disagrees.  At the hearing on September 1, 2021, Allstate made it clear that it "would also be seeking to convert the preliminary injunction entered early in the case to a permanent injunction."  (Tr. at 5).  This was undeniably understood by defense counsel, who confirmed that the only matters left in the

---

[2] At the hearing on September 1, 2021, the defendants agreed that if any evidentiary hearing was needed in connection with the request for a permanent injunction, it would be jury-waived.  (Tr. at 10-12).  Their present request for a jury trial is inappropriate.

case were for the court to enter judgment on the breach of contract claims and to address the request for a permanent injunction.  (See Tr. at 10).  Admittedly, the court expected all parties to include the language for a permanent injunction in their proposed orders of judgment and/or to address whether and what type of evidentiary hearing was needed in connection with the request for a permanent injunction.  (See Tr. at 13).  Both parties failed to reference an injunction at all in their simultaneous filings.  However, the pleadings in connection with the instant Motion raise the issues which need to be addressed.

"Waiver is the intentional relinquishment of a known right."  Bachorz v. Miller-Forslund, 812 F. Supp. 2d 83, 88 (D. Mass. 2011) (citation omitted).  In the instant case, there is nothing in the record to indicate that Allstate intended to waive its right to seek a permanent injunction. In fact, Allstate made it clear at the September 1, 2021 hearing that it was seeking a permanent injunction.  Apparently, no agreement on the terms of a permanent injunction was reached after the hearing.  Nevertheless, in connection with the instant Motion the parties have presented all the procedural and substantive issues necessary for this court to issue a ruling with respect to such relief.  In the absence of any clear statement by Allstate of an intent to abandon its right to pursue a permanent injunction, the court declines to find that the request for a permanent injunction has been waived.

Defendants also argue that by seeking nominal damages Allstate waived its right to injunctive relief.  (Opp. at 2).  In support of this argument the defendants rely on cases holding that there is no irreparable harm where losses can be compensated by monetary damages.  (Id. (citing Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003); First W. Capital Mgmt. Co. v. Malamed, 874 F.3d 1136, 1141 (10th Cir. 2017)).  Whether a permanent injunction

is appropriately awarded in this case will be discussed <u>infra</u>.  However, the request for damages does not in and of itself constitute a waiver of a claim for injunctive relief.

There may be cases where monetary damages for past harm and injunctive relief to prevent future harm may be appropriate.  In the instant case, however, Allstate has sought only nominal damages.  A finding of a breach of contract entitles the injured party to an award of nominal damages, even if the breach caused no harm.  <u>Flynn v. A.K. Peters, Ltd.</u>, 377 F.3d 13, 23 (1st Cir. 2004) (and cases cited).  An award of nominal damages is not inherently inconsistent with an award of injunctive relief if such relief is otherwise appropriately awarded.  <u>See</u> <u>Burnham v. Beverly Airways</u>, 311 Mass. 628, 637, 42 N.E.2d 575, 580 (1942) (awarding nominal damages and injunctive relief to stop nuisance and trespasses caused by flying airplanes over plaintiffs' property).  <u>See</u> <u>also</u> <u>Doe v. Shibinette</u>, 16 F.4th 894, 899 (1st Cir. 2021) (denying motion to dismiss complaint seeking injunctive and declaratory relief in addition to nominal damages, costs, and attorneys' fees); <u>Ocean State Physicians Health Plan, Inc. v. Blue Cross & Blue Shield of Rhode Island</u>, 883 F.2d 1101, 1106 (1st Cir. 1989) (recognizing situations where injunction may be appropriate in addition to nominal damages) (and cases cited)).

The court will address whether injunctive relief is appropriate below, and in doing so, the court will consider, among other things, whether there are remedies available at law which render injunctive relief inappropriate, regardless of whether Allstate decided to forego its claim for monetary damages.  However, the mere fact that Allstate has sought damages does not constitute a waiver of its claim for injunctive relief.

## IV. <u>FACTS PREVIOUSLY FOUND BY THE COURT</u>[3]

The court agrees with Allstate that all the facts and legal rulings necessary for a ruling on the motion for a permanent injunction have been established in connection with the summary judgment rulings.  The relevant facts will be summarized below, but the court's entire SJ Order. is incorporated herein by reference.

Specifically, but without limitation, this court has already found that on or about February 1, 2013, Fougere became an Exclusive Agent for Allstate and entered into an EA Agreement with the company.  (SJ Order at 5-6).  Fougere's office was located in Framingham, Massachusetts.  (<u>Id.</u> at 8).  On April 1, 2014, Brody-Isbill entered into an EA Agreement with Allstate and opened up an Allstate office in Auburn, Massachusetts.  (<u>Id.</u> at 8-9).  The Agreements signed by Fougere and Brody-Isbill were substantially identical.  (<u>Id.</u> at 6 n.4).  Of significance, the EA Agreements provide in relevant part:

IV.    COMPANY PROPERTY, CONFIDENTIALITY:

. . . .

B. Agency [Fougere or Brody-Isbill] agrees that it will not at any time or in any manner, directly or indirectly, disclose to any third party or permit any third party to access any confidential information or any information containing trade secrets concerning any matters affecting or relating to the pursuits of the Company, except upon direct written authority of the Company. Furthermore, upon termination of this Agreement, Agency agrees to treat as confidential and not to disclose, either, directly or indirectly, to any third party any confidential information or trade secrets of the Company.

C. Agency agrees that it will not disclose or grant access to any confidential information or trade secrets to any of its employees or other persons providing services for it in connection with this Agreement, unless such

---

[3] While the court will cite to the SJ Order unless more specificity is needed, citations to the summary judgment record in the SJ Order are incorporated herein by reference.

employee or other person has signed a copy of the Confidentiality and Non-Competition Agreement. . . .

D. Confidential information includes, but is not limited to: business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of Insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public. All such confidential information is wholly owned by the Company. Such confidential information may be used by Agency only for the purposes of carrying out the provisions of this Agreement.

E. Any confidential information or trade secrets recorded on paper, electronic data file, or any other medium, whether provided by the Company or by Agency, is the exclusive property of the Company, as is any such medium and any copy of such medium.

F. *Agency recognizes that a breach of the foregoing provisions will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure. Agency agrees that in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, without the necessity of posting a bond, and Agency waives any defense to an application for such order, except that the violation did not occur.* Agency agrees that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.

(EA Agreement (Docket No. 127-13) (emphasis added)).

In 2014, Fougere formed "Thumbs Up Marketing, Inc." ("Thumbs Up") using the Framingham address of his Allstate office. (SJ Order at 9). Brody-Isbill's mother (Fougere's girlfriend) formed "Awesome Agents, Inc." ("Awesome Agents") on the same day, also using the

Allstate Framingham address. (Id. at 7, 9). Fougere claims that Thumbs Up was a marketing company that bought and sold leads, while Allstate contends that it was another insurance agency. (Id.)

Due to (disputed) reasons that are beyond the scope of this litigation, Allstate terminated Fougere's EA Agreement on November 19, 2014, and without notice, cut off his access to Allstate's online electronic records portal, and collected any physical files in his Allstate agency office. (Id. at 10). Again, for disputed reasons beyond the scope of this litigation, Allstate terminated Brody-Isbill's EA Agreement on October 5, 2015, effective immediately, terminated her access to Allstate's electronic records portal, and collected the physical files in her Allstate office. (Id. at 10-11). Fougere and Brody-Isbill continued their insurance business at ABIA, an insurance agency managed by Fougere before, during, and after his affiliation with Allstate. (Id. at 5, 9-10).

On November 11, 2015, Allstate's attorney sent a letter to Fougere's attorney stating that Allstate had "reason to believe that Fougere still possesse[d] Allstate confidential information and, even more disturbing, has already used this information to solicit Allstate customers on behalf of his insurance agency, 'A Better Insurance Agency.'" (Id. at 12). The letter requested written assurance from Fougere's counsel that Fougere did not possess and was not using Allstate's confidential information, as defined in his EA agreement. (Id.) As quoted above, the EA Agreement defines "confidential information" belonging to Allstate as including, without limitation, "information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; . . . the expiration or renewal dates of policies; policyholder listings and any policyholder

information subject to any privacy law[.]"  (Id. at 6-7).  On January 11, 2016, Fougere's counsel

replied in writing to Allstate's attorney that "Fougere has not utilized any customer lists or

confidential information of Allstate to solicit clients" and assured Allstate that Fougere would

"continue to respect and not disclose any confidential information of Allstate[.]"  (Id. at 12).

On July 20, 2016, three former employees of ABIA, who had left ABIA to form a

competing business, emailed plaintiff's counsel and informed him that Fougere had been using

customer information from Allstate and requiring ABIA employees to use this information to

contact Allstate customers on behalf of ABIA.  (Id. at 12).  These former ABIA employees

subsequently provided affidavits with additional details of Fougere's and Brody-Isbill's use in

connection with ABIA's business of Allstate customer information and files containing all of the

information described in the EA Agreement as confidential.  (Id. at 12-13).  The former

employees also provided Allstate's counsel portions of files labeled "Framingham Allstate book

of business" and "Allstate Auburn book of business," which were contained on a restricted

Google Drive at ABIA.  (Id. at 13).  These files included the "names, addresses, phone numbers,

email addresses, renewal dates, types of insurance policies, and premiums paid by insurance

customers."  (Id.).  Fougere had represented to the former employees, in the presence of

Brody-Isbill, that this information had come from their former Allstate insurance agencies.  (Id.)

While the defendants "dispute the truthfulness" of the statements made by the former

employees, they have not denied having the information.  (Id.)  Instead, the defense has

focused on the argument that the information does not qualify as confidential or trade secret

information, and/or that the information does not belong to Allstate.

Suit was filed on August 15, 2016.  As described above, a TRO was issued on August 15, 2016, and a preliminary injunction was entered on November 22, 2016.  A subsequent court-ordered forensic examination of ABIA's computers revealed spreadsheets entitled, "Allstate-Auburn" and "Allstate-Framingham" in the trash folder of the computer, as well as additional customer lists entitled, "TU Framingham" and "TU Auburn."  (Id. at 14).  By the time an independent forensic examination was able to be conducted, after much motion practice, the Allstate-Auburn and Allstate-Framingham folders had been permanently deleted, although the TU Framingham and TU Auburn spreadsheets (collectively the "Spreadsheets") remained.  (Id.)[4] Whether the permanent deletion of the "Allstate" folders was intentional or due to the defendants' inattention or incompetence remains an open question in this litigation. Moreover, it is unclear whether the two sets of documents are just duplicates as the defendants contend, or if there are four distinct lists.  (Id.)  The defendants, while claiming that "persons on the list are not all current customers of Allstate" admitted:

> The "Thumbs Up Framingham" and "Thumbs Up Auburn" spreadsheets produced by Defendants Fougere and Brody-Isbill each contain the names of thousands of Allstate customers, along with their renewal dates, premiums, types of insurance, Allstate policy numbers, drivers' license numbers, home addresses, phone numbers and email addresses.

(Id. at 13-14.)

---

[4] Some of the history of the search of ABIA's computer systems is detailed in Allstate's "Motion *in Limine* No. 9 for an Adverse Inference Instruction Regarding the Spreadsheets Destroyed by Defendants Fougere and ABIA"  (Docket No. 212)  and related pleadings.

**The Court's Ruling**

The request for a permanent injunction is based on the defendants' breach of the EA Agreements.  However, this court also notes that in connection with the ruling on the summary judgment motions, this court rejected the defendants' contention that the information in question belonged to the defendants as a matter of law pursuant to Mass. Gen. Laws ch. 175, § 162F. Specifically, this court ruled that that statute did not apply to the parties' exclusive agency arrangement.  (SJ Order at 21-26).  The court also addressed in detail, but ultimately rejected, defendants' challenges to awarding protection to the TU Auburn and TU Framingham Spreadsheets, including and without limitation, their arguments that no protection should be afforded to the Spreadsheets because the information contained therein belonged to the defendants rather than Allstate, was publicly available, was not kept confidential by Allstate, and did not constitute confidential information as a matter of law.  (Id. at 36-43).  These arguments formed the basis of the defendants' unsuccessful cross-motions for summary judgment on Allstate's breach of contract claims.  (Id. at 43).  To the extent the defendants presented disputed issues of fact in connection with their cross-motions for summary judgment, they were addressed and found to be immaterial.  (Id. at 36-37).

This court found that the information in the TU Framingham and TU Auburn Spreadsheets are the types of information that are specifically listed and defined as being "confidential" in the EA Agreements.  (Id. at 38).  The court explained that this information is recognized as being vital for soliciting renewals and is valued in the industry.  Anyone having the information would be at a competitive advantage.  Therefore, the court held the confidentiality provisions of the EA Agreements to be enforceable and concluded that Fougere

[14]

and Brody-Isbill had breached their EA Agreements.  (Id. at 38-40 and cases cited).  Separately,

and after analysis, the court further ruled that the information constituted trade secrets that

had been improperly acquired in breach of the defendants' contractual obligations.  (Id. at 44-

50).

Finally, the court rejected the defendants' argument that Allstate had failed to establish

any damages, noting that the EA Agreements contain an acknowledgment that the disclosure of

the confidential information would cause Allstate irreparable harm.  (Id. at 43).  There was also

undisputed evidence in the record that the information at issue had economic value.  (Id.)

Thus, the court concluded, "Allstate ha[d] established that it has been harmed by the

defendants' breach of contract.  The extent of that harm will have to be decided at trial."  (Id.)

## V. NO EVIDENTIARY HEARING IS NECESSARY

The defendants contend that "Allstate must identify and delineate each item of

information in the lists that is in fact a legally, definable trade secret and confidential

information[,]" and seek an evidentiary hearing to establish whether the Spreadsheets, and the

information contained therein, are worthy of protection.  (Opp. at 4).  Thus, in addition to the

need to establish "that the information still has commercial value" given that the Spreadsheets

were created several years ago, the defendants argue that "Allstate also needs to show that

information contained in the lists were created by Allstate, that the information is not publicly

known, that Allstate treated the information as its confidential information, and that Allstate

took all reasonable steps to maintain the information as confidential."  (Id.; see also Opp. at 7

(listing factors Allstate allegedly must prove to establish the existence of confidential

information)).  These issues have all been previously addressed, at length, in the court's SJ

Order.  The facts have either been established or determined to be immaterial.  There is no need for an evidentiary hearing.

Without belaboring the point, this court has already addressed and rejected the defendants' arguments that the type of information contained in the TU Framingham and TU Auburn Spreadsheets cannot qualify as confidential (or trade secret) information.  In particular, the court has addressed the defendants' numerous objections, including, without limitation, their contention that the information cannot be protected because it could be derived from public sources, and their position that the information could not be Allstate's confidential information if the Spreadsheets were put together by the defendants.  (See SJ Order at 36-40).  The court also found as a matter of fact and law that the steps taken by Allstate to keep the information confidential were sufficient to maintain its confidential status.  (Id. at 40-42).  The fact that the Spreadsheets were created several years ago is readily apparent and will be considered in connection with the merits of this request for a permanent injunction.  While defendants maintain their objection to this court's rulings, their dispute is with the legal analysis.  As evidenced by the cross-motions for summary judgment on the breach of contract counts, the material facts are not in dispute.  Therefore, the defendants' request for an evidentiary hearing is denied.

## VI.  A PERMANENT INJUNCTION IS WARRANTED

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court[.]"  eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).  As the Supreme Court has explained:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff

[16]

must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Id.  Accord Esso Standard Oil Co. v. López-Freytes, 522 F.3d 136, 148 (1st Cir. 2008).  Applying these factors, this court concludes that a permanent injunction is warranted.

### Irreparable Harm

"The first two of the four factors are satisfied on a showing of 'substantial injury that is not accurately measurable or adequately compensable by money damages.'"  CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008) (quoting Ross-Simons of Warwick, Inc., 217 F.3d 8, 13 (1st Cir. 2000)).  In the instant case, not only did Fougere and Brody-Isbill acknowledge by signing the EA Agreements that misuse of Allstate's confidential information would cause Allstate irreparable harm, but the case law also recognizes that "[a]s a general rule," the wrongful use of trade secret information by a competitor "triggers a finding of irreparable harm."  Aspect Software, Inc. v. Barnett, 787 F. Supp. 2d 118, 130 (D. Mass. 2011).  In fact, cases go so far as to state that misappropriation of trade secrets creates a presumption of irreparable harm.  See Optos, Inc. v. Topcon Medical Systems, Inc., 777 F. Supp. 2d 217 , 241 (D. Mass. 2011) (and cases cited).  This court has previously found that the information contained in the Spreadsheets is considered very valuable in the insurance industry and gives a competitive advantage to the owner of such information.  Under such circumstances, this court concludes that Allstate has established that it would suffer irreparable harm if the Spreadsheets and information contained therein were not kept confidential.

[17]

The defendants argue that Allstate should have to prove that the Spreadsheets still have commercial value given the age of the information contained therein.  (See Opp. at 4).  Under the facts of this case, additional evidence on this point is not necessary.  Whether or not all the information is current, the Spreadsheets, at a minimum, give insurance agents a starting point to solicit customers, and provide information about the types of coverage the customers might be interested in, thereby helping with the making of future sales.  The age of the Spreadsheets does not render them without any value or justify the lifting of the preliminary injunction.

The defendants also argue that the fact that the information may have been known to the former ABIA employees who notified Allstate's counsel about the defendants' retention and use of confidential information precludes the entry of a permanent injunction.  (Opp. at 4-5).  Thus, the defendants argue:

> Allstate made no effort to obtain these lists from these individuals or their attorney or take any steps to prevent them from using the lists or otherwise maintain the confidentiality of said lists.  By way of such inaction, Allstate has waived its claims of irreparable harm and that the lists are confidential or a trade secret, as Allstate now claims five and a half years later.

(Opp. at 5).  This argument is rather remarkable.  As an initial matter, the defendants have provided no factual support for their assertion.  They cite to no part of the (voluminous) record detailing whether or not Allstate required these former ABIA employees to return the misappropriated information, although logic suggests that since these individuals brought the misappropriation of Allstate's information to Allstate's attention, these individuals would not then use the information to compete with Allstate.  Moreover, the defendants have provided no information indicating that these former ABIA employees used the confidential information

once they left ABIA's employ.[5]  Thus, there is no evidence that Allstate became aware of an improper use but failed to take steps to prevent it.  Finally, the defendants agreed to a preliminary injunction knowing the confidential information was on ABIA's servers, and never moved to modify the preliminary injunction throughout the course of the lengthy litigation – even after the former ABIA employees admitted having had access to the information.  The defendants' prior challenges to the designation of the Spreadsheets as confidential were not based on the Spreadsheets availability to ABIA employees.  The fact that former ABIA employees had access to the misappropriated confidential information does not negate the irreparable harm that Allstate may suffer if the defendants in this action, who have proved their intention to use the confidential information for their own benefit, are not enjoined.

Finally, the defendants argue that "there is <u>no</u> basis for injunctive relief with respect to ABIA" since Allstate has dropped its claims against the company.  (Opp. at 1, emphasis in original).  This argument too is without merit.  An injunction may extend to the parties as well as any "other persons who are in active concert or participation with" them.  Fed. R. Civ. P. 65(d)(2)(A) & (C).  There is no question that ABIA was in active participation with Fougere and Brody-Isbill and thereby including ABIA in the permanent injunction is entirely appropriate.

<u>Balance of Hardships</u>

"Any potential harm caused to [Allstate] by a denial of its motion must be balanced against any reciprocal harm caused to [the defendants] by the imposition of an injunction." <u>TouchPoint Solutions, Inc. v. Eastman Kodak Co.</u>, 345 F. Supp. 2d 23, 32 (D. Mass. 2004).  The

---

[5] Since ABIA sued these employees in connection with their departure from ABIA, ABIA presumably determined what information, if any, these employees were using.  (<u>See</u> SJ Order at 12 n.10).

balance of hardships weighs heavily in favor of issuing the permanent injunction.  As detailed above, the dissemination of the confidential information may cause Allstate irreparable harm. On the other hand, it should cause the defendants no hardship to continue the prohibition in the preliminary injunction denying them access to, or the authority to use, the Spreadsheets and the information contained therein.  Presumably, the defendants have developed their business without the use of Allstate's confidential information.  The defendants do not allege that they would suffer harm if a permanent injunction were to issue.  Thus, this factor favors Allstate.

Public Interest

"A [permanent] injunction is not appropriate unless there is 'a fit (or lack of friction) between the injunction and the public interest.'"  Optos, Inc., 777 F. Supp. 2d at 241-42 (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)).  In light of Massachusetts' "clear public policy in favor of strong protections for trade secrets" the issuance of a permanent injunction in the instant case is consistent with public policy.  Id. at 242.

VII.  <strong>SCOPE OF THE INJUNCTION</strong>

By its motion, Allstate asks this court to "enter an Order converting the preliminary injunction entered in[] this matter into a permanent injunction."  (Motion at 1).  Specifically, Allstate requests an Order that "permanent[ly] enjoin[s] Defendants, and anyone in concert with them, from using, disclosing, further misappropriating or accessing the Spreadsheets, ordering Defendants to turn over any remaining copies of the Spreadsheets to [Allstate] and certify that they have no other copies[.]"  (Id. at 5-6).  Such an injunction, which "simply prohibits contract breach or, put another way, specifically enforces the contract" is entirely

[20]

appropriate.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8, 14 (1st Cir. 2000).

Thus, it is hereby Ordered as follows:

1.  Defendants James Fougere, Sarah Brody-Isbill, and A Better Insurance Agency, Inc. ("ABIA"), and the employees and/or insurance agents of ABIA, are permanently enjoined from, directly or indirectly, accessing, using, possessing, or having access to the spreadsheets entitled "TU Framingham" and "TU Auburn" which were located on ABIA's and/or Fougere's databases and/or servers in connection with this litigation (hereinafter the "Spreadsheets") and the information contained therein.

2.  Within fourteen (14) days of the date of this Order, defendants James Fougere, Sarah Brody-Isbill, and ABIA, and the employees and/or insurance agents of ABIA shall return any remaining copies of the Spreadsheets to counsel for Allstate.  In addition, within seven (7) days of the date of this Order, defendants James Fougere, Sarah Brody-Isbill, and ABIA shall file a certification, under oath, with the court, attesting to the fact that all copies of the Spreadsheets, in any form, have either been returned to Allstate or destroyed.

SO ORDERED.

   / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge