UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALLSTATE INSURANCE COMPANY,              )
                                         )
        Plaintiff/Counterclaim           )
        Defendant,                       )
                                         )
v.                                       )          CIVIL ACTION
                                         )          NO. 16-11652-JGD
JAMES FOUGERE, SARAH BRODY-ISBILL,       )
and A BETTER INSURANCE AGENCY, INC.,     )
                                         )
        Defendants/                      )
        Counterclaimants.                )

## MEMORANDUM OF DECISION AND ORDER ON
## PLAINTIFF'S PETITION FOR ATTORNEYS' FEES AND COSTS

March 28, 2022

DEIN, U.S.M.J.

## I.  INTRODUCTION

This matter is before the court on "Plaintiff's Petition for Attorneys' Fees and Costs"

(Docket No. 270) ("Fee Petition") pursuant to which the plaintiff, Allstate Insurance Company

("Allstate"), is seeking to recover its attorneys' fees and costs incurred in prosecuting and

defending its breach of contract claims against its former Exclusive Agents, the defendants

James Fougere ("Fougere") and Sarah Brody-Isbill ("Brody-Isbill"), who used confidential

Allstate information in their competing insurance business, the defendant A Better Insurance

Agency, Inc., ("ABIA"), in violation of their Exclusive Agency Agreements ("EA Agreements").[1]

---

[1] Since Allstate's entitlement to fees and costs arises out of its contractual arrangements with Fougere
and Brody-Isbill, and it had no contract with defendant ABIA, the fees and costs will be awarded only
against Fougere and Brody-Isbill.

As this court ruled in its "Memorandum of Decision and Order on Cross-Motions for Summary Judgment" ("SJ Order") (Docket No. 164), issued on September 30, 2019, the confidential (and trade secret) information was contained in two spreadsheets, known as "TU Framingham" and "TU Auburn," which were found on ABIA's computer system and included "the names of thousands of Allstate customers, along with their renewal dates, premiums, types of insurance, Allstate policy numbers, drivers' license numbers, home addresses, phone numbers and email addresses." (SJ Order at 13-14).[2]  Disgruntled former employees of ABIA had disclosed the possession and misuse of the confidential information to Allstate and worked with Allstate to identify the scope of ABIA's use of the information.

A preliminary injunction was issued early in litigation, on November 22, 2016, preventing the defendants from using and/or accessing the TU Framingham and TU Auburn spreadsheets.  (Docket No. 14).  Pursuant to the SJ Order of September 30, 2019, and a subsequent summary judgment ruling on March 26, 2020 (the "93A SJ Order") (Docket No. 195), all of the defendants' counterclaims were dismissed, and judgment as to liability only was entered in Allstate's favor on its breach of contract and misappropriation of trade secrets claims against Fougere and Brody-Isbill, as well as on its breach of the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1839 *et seq.* ("DTSA") claims against Fougere, Brody-Isbill and ABIA. Allstate subsequently dismissed its claims against all three defendants alleging violations of Mass. Gen. Laws ch. 93A.  Allstate notified the court that it intended to go to trial to assess damages on the breach of contract, misappropriation of trade secrets and DTSA claims,

---

[2] "TU" apparently stands for "Thumbs Up," a company owned by Fougere.  (SJ Order at 9).

including multiple damages on its trade secret misappropriation claims.  (Docket No. 197).  In addition, Allstate notified the court that it intended to pursue its interference with advantageous business relations claim against ABIA at trial.  (Id.).

A final trial date was set for September 20, 2021.  (Docket No. 255).  On August 25, 2021, Allstate informed the court that it would seek only a permanent injunction and nominal damages for its breach of contract claims, and dismiss all of its other claims, if it was permitted to seek attorneys' fees and expenses in connection with its breach of contract claims in accordance with the terms of the EA Agreements.  (Docket No. 262).  Since it was undisputed that the EA Agreements provided for recovery of attorneys' fees and costs in the event of a breach of their confidentiality provisions, the court terminated the scheduled jury trial and set a schedule for Allstate's proposed applications for fees and expenses and a permanent injunction.  (See Docket No. 276).[3]  On October 15, 2021, Allstate filed its instant Fee Petition (Docket No. 270) and on December 15, 2021, it filed its "Motion for Entry of a Permanent Injunction."  (Docket No. 280).

Following substantive briefing, on January 21, 2022, this court issued its "Memorandum of Decision and Order on Plaintiff's Motion for Entry of a Permanent Injunction" (Docket No. 283) ("PI Order") granting Allstate a permanent injunction prohibiting Fougere, Brody-Isbill and ABIA from "directly or indirectly, accessing, using, possessing, or having access to the spreadsheets entitled 'TU Framingham' and 'TU Auburn' . . . and the information contained

---

[3] In connection with a motion in limine filed by Allstate, the defendants had all previously agreed that if reasonable fees and costs were to be awarded in connection with the breach of contract claims they would be decided by the court.  (See Docket Nos. 206, 215, 233).

therein." (PI Order at 21).  On the same date, the court entered an Order of Judgment (Docket No. 284) entering judgment in favor of Allstate on its claims for breach of contract against Fougere and Brody-Isbill and awarding Allstate $1.00 in nominal damages from each of those defendants.  All of Allstate's remaining claims were dismissed in accordance with Allstate's agreement to do so.  All of the defendants' counterclaims were dismissed in accordance with the court's summary judgment orders.  The court further noted that a subsequent judgment would be entered following its ruling on the Fee Petition.

Unfortunately, this case has been plagued by a lack of trust between the parties as well as between counsel, a "leave no stone unturned" philosophy of both prosecution and defense, and an inability of the parties to compromise.  Thus, what should have been a straightforward breach of contract claim, which could have been concluded by the entry of a permanent injunction early on in the litigation, blossomed into almost six (6) years of intensive, overly-complicated and costly litigation.  The extreme positions taken by the parties is evidenced by the pending Fee Petition:  Allstate is seeking $583,229.00 in fees and $34,397.66 in costs for a total of $617,626.66 "to account for its attorneys' fees and costs in successfully prosecuting its case and defending against Defendants' counterclaims arising out of the confidentiality provision in their EA Agreements" (Fee Petition at 16) while the defendants contend that if Allstate is entitled to any fees, which they deny, "the total amount [of] fees potentially awardable to Allstate" is $4,224.52.  ("Defendants' Opposition to Plaintiff's Petition for Attorneys' Fees and Costs" ("Opp.") (Docket No. 274) at 5).  The broad generalities used both in billing and argument (by both parties) have made the parties' briefing remarkably unhelpful in assessing an appropriate award of fees and costs.

[4]

After careful consideration of the evidence before the court, Allstate's Fee Petition is allowed in the amount of $220,807.05 in fees and $13,440.23 in expenses for a total of $234,247.28.  The court's analysis is described below.  The court assumes the reader's familiarity with the SJ Order and PI Order so that the procedural history and facts of this case are described only to the extent necessary to explain the award made here.

## II.  <u>ALLSTATE'S ENTITLEMENT TO FEES</u>

The EA Agreements between Allstate, Fougere and Brody-Isbill (each defendant being identified as "Agency" in their EA Agreement) provide as follows:

> Agency recognizes that a breach of the foregoing provisions [regarding Allstate's confidential information] will cause irreparable damage to the Company's business and that such damage is difficult or impossible to measure.  Agency agrees that in the event of such breach, the Company, in addition to such other rights and remedies it may have, will be immediately entitled to an order granting injunctive relief from any court of competent jurisdiction against any act which would violate any such provision, with the necessity of posting a bond, and Agency waives any defense to an application for such order, except that the violation did not occur.  **Agency agrees that the Company will be entitled to an award of reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach of the foregoing provisions.**

(SJ Order at 38, EA Agreement ¶ IV.F) (emphasis added).

The defendants contend that Allstate is not the "prevailing party" entitled to fees on its breach of contract case because it was not awarded any damages.  (Opp. at 4).  This argument is defeated by the above-quoted contractual provision, which expressly provides that Allstate is entitled to recover "reasonable attorneys' fees in the event that it is successful in an application for injunctive relief or in an action based upon breach" of the confidentiality provisions of the EA Agreements.  Here, Allstate prevailed in obtaining injunctive relief and also in its action based on the defendants' breach of their confidentiality obligations under their EA Agreements.

[5]

As this court previously ruled in the PI Order, "[u]nder Massachusetts law, a person who is injured by a breach of contract has a right to judgment even if the breach caused no harm" and, thus, is the prevailing party entitled to at least nominal damages.  Flynn v. AK Peters, Ltd., 377 F.3d 13, 23 (1st Cir. 2004) (and cases cited).  See also Bos. Prop. Exch. Transfer Co. v. Iantosca, 720 F.3d 1, 11 (1st Cir. 2013) ("causation of damages is not an element of breach of contract, as a plaintiff is entitled to at least nominal damages upon proving a breach.").  Contractual provisions entitling a party to recover their attorneys' fees are enforceable.  Bournewood Hosp., Inc. v. Mass. Comm'n Against Discrimination, 371 Mass. 303, 311-12, 358 N.E.2d 235, 240 (1976).  Thus, Allstate is entitled to its reasonable attorneys' fees and costs in connection with its efforts to obtain injunctive relief as well as its action for breach of contract.

As will be seen below, the more difficult questions here are whether the time spent on matters was excessive and how the prosecution of the breach of contract claims relates to the numerous other claims and counterclaims raised by the parties.  As Allstate correctly notes, where legal and factual claims are interconnected "attempts to allocate hours between claims may be unwarranted. . . ."  Alfonso v. Aufiero, 66 F. Supp. 2d 183, 194 (D. Mass. 1999) (citing Phetosomphone v. Allison Reed Group, Inc., 984 F.2d 4, 7 (1st Cir. 1993)).  Cases recognize that where claims for which the prevailing party is entitled to fees "'arose from the same common core of facts or were based on related legal theories,' the 'rationale for discounting hours spent on unsuccessful claims does not apply.'"  Walsh v. Bos. Univ., 661 F. Supp. 2d 91, 105 (D. Mass. 2009) (quoting Bogan v. City of Boston, 489 F.3d 417, 428 (1st Cir. 2007)).  On the other hand, "[a]ttorneys' fees normally should not be awarded for time spent in litigating (or preparing to litigate) unsuccessful, severable claims."  Coutin v. Young & Rubicam Puerto Rico, Inc., 124 F.3d

331, 339 (1st Cir. 1997).  In the instant case, while most of the claims and counterclaims arose out of the defendants' use of Allstate's information at ABIA, both Allstate and the defendants asserted a number of claims which raised legal issues that went well beyond a straightforward breach of contract claim.

Allstate's complaint, as amended, included eleven (11) counts, consisting of claims for breach of contract against Fougere and Brody-Isbill (Counts I & V), claims for misappropriation of trade secrets against the same defendants (Counts II & VI), claims for violations of the DTSA against Fougere, Brody-Isbill and ABIA (Counts III, VII & IX), claims for violation of Mass. Gen. Laws ch. 93A against the same three defendants (Counts IV, VIII & X), and a claim for interference with advantageous business relations against ABIA (Count XI).  While these counts arose from substantially the same facts as the breach of contract claims, they raised distinct issues of law including, without limitation, whether the confidential information constituted trade secrets, the applicability of the DTSA to the instant dispute and the standard for multiple damages thereunder, and whether Mass. Gen. Laws ch. 93A applied to the relationship between Allstate and the defendants.  In addition, substantially all the work done to prepare for trial after the SJ Order issued was unnecessary since Allstate's entitlement to nominal damages for its breach of contract claim was established by no later than the time of the summary judgment ruling.  The court, therefore, has had to parse the request for fees because the work was excessive and not all interconnected.

The defendants asserted five counterclaims against Allstate: breach of covenant of good faith and fair dealing (Count I), violation of Mass. Gen. Laws ch. 175, §163 (Count II), violation of Mass. Gen. Laws ch. 175, § 162F (Count III), interference with contractual relations (Count IV)

(which was withdrawn), and violation of Mass. Gen. Laws ch. 93A (Count V).  Thus, the

defendants argued that the confidential information belonged to them under Mass. Gen. Laws

ch. 175, § 162F, and further, that Allstate violated Mass. Gen. Laws ch. 93A by, inter alia,

seeking to prevent their use of the information.  These counterclaims raised novel and

significant issues of law.  However, since the counterclaims were primarily directed to proving

that the information which the defendants eventually admitted to taking belonged to them and

not Allstate, and did not qualify as confidential or trade secret information, this court concludes

that Allstate is entitled to recover its reasonable fees and expenses in defending against these

counterclaims since they are intertwined with its prosecution of the breach of contract claims.

On the other hand, the defendants also argued that Allstate had breached the EA Agreements

by failing to give them 180-day notice before terminating their Agreements, as required by

Mass. Gen. Laws ch. 175, § 163 (which this court found to be inapplicable), and that such

breach constituted a breach of the covenant of good faith and fair dealing.  These are distinct

arguments for which Allstate is not entitled to compensation.  As detailed below, Allstate has

acknowledged this, and has reduced its summary judgment fees by 20% to account for work

done on these distinct issues.  Again, however, the court must parse the Fee Petition to

determine whether the work done in defending against the counterclaims was compensable as

being interconnected with the breach of contract claims.

### III.  **STANDARD FOR AWARDING FEES**

In this Circuit, "[t]he lodestar approach is the method of choice for calculating fee

awards."  Matalon v. Hynnes, 806 F.3d 627, 638 (1st Cir. 2015).  As the First Circuit Court of

Appeals has explained:

[8]

> Under this lodestar approach, a district court first "calculate[s] the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are 'excessive, redundant, or otherwise unnecessary.'" *Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Emp'rs v. Ray Haluch Gravel Co.,* 745 F.3d 1, 5 (1st Cir. 2014) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). The court then determines "a reasonable hourly rate or rates–a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Id.* Multiplying the results of these two inquiries yields the lodestar amount. The court may then adjust the potential award based on factors not captured in the lodestar calculation. *See Hensley,* 461 U.S. at 434 & n.9, 103 S. Ct. 1933; [*Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 337 (1st Cir. 1997)].

Matalon, 806 F.3d at 638. Accord Pérez-Sosa v. Garland, 22 F.4th 312, 321 (1st Cir. 2022).

Allstate, as the fee applicant, "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates". Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1941, 76 L. Ed. 2d 40 (1983).

"[W]hen fee-shifting is in prospect, attorneys are obliged to maintain contemporaneous time records." Pérez-Sosa, 22 F.4th at 329. Records need not be overly detailed, but, typically, they will show the date the work was done, the kinds of work performed, and the percentage of time spent on each task. Id. Less detail than that inhibits the opponent from challenging the reasonableness of the hours expended and the district court in calculating the lodestar amount. Id. at 329-30. "After all, 'nebulous' entries amounting to 'gauzy generalities' threaten to frustrate a district court's effort to fashion a fair and reasonable fee award." Id. at 330 (citation omitted).

Once properly applied, the lodestar method results in fees that are "presumptively sufficient to achieve the underlying purposes of fee-shifting." Id. at 321 (punctuation and quotation omitted). A district court's task in fashioning reasonable fees "is to do rough justice, not to achieve auditing perfection." Id. at 322 (punctuation and citation omitted). Ultimately,

the district court's discretion with respect to fee awards is "extremely broad" and is afforded considerable deference if supported by a reasonable rationale.  Id. at 320-21, 331.

### IV.  FEES AND COSTS ALLSTATE IS SEEKING

Allstate has submitted the Declaration of Kevin J. Mahoney ("Mahoney Decl.") (Docket No. 270-1) and his firm's bills to Allstate (Id. at Ex. B) in support of its Fee Petition.[4]  The bills contain "the contemporaneous time entries for the work performed by Seyfarth Shaw's core team that is requested by Allstate."  Mahoney Decl. ¶ 11.  Allstate has limited its Fee Petition to "work performed by a core team from Seyfarth Shaw of two attorneys: J. Scott Humphrey and Kevin J. Mahoney."  Id. ¶ 4.  According to Mr. Mahoney, Allstate is seeking "a total lodestar amount of $583,229.00 in fees for 1,344.1[5] hours of legal services performed by the Seyfarth Shaw core team, as well as $34,397.66 incurred by Allstate to prosecute its claims and defend the counterclaims by Defendants" Fougere and Brody-Isbill.  Id. ¶ 3.  Thus, the total sought is $617,626.66.  (Fee Petition at 16).  With the exception of the reductions described below, Allstate contends that all the work for which it is seeking compensation was interconnected to the prosecution of its breach of contract claims, and that no further reductions are therefore appropriate.  (Id. at 10).  As detailed more fully below, this court disagrees.

Mr. Mahoney worked on this litigation basically from its inception – originally as an associate at the Chicago office of Seyfarth Shaw, and later as a partner.  Mahoney Decl. ¶

---

[4] Page citations are to the ECF page numbers.

[5] Despite a careful analysis, the court's calculations are slightly different.  The slight discrepancy is irrelevant in the context of the fees awarded herein.

1-2.  He graduated from The Ohio State University Moritz College of Law in 2009, joined

Seyfarth Shaw as an associate in 2016, and was promoted to Partner at the firm in 2020.  Id. ¶

7.  Allstate contends that it is seeking compensation for 967.7 hours of Mr. Mahoney's time at

the rate of $365/hour in 2016-2019 and $525/hour in 2020-21, for a total of $392,408.30.  Id.

¶¶ 10, 20, Ex. A, C.[6]

Allstate is also seeking fees incurred in connection with 376.4 hours of work by J. Scott

Humphrey who, until his resignation from the firm in June 2021, was a partner at Seyfarth Shaw

and co-lead of the Trade Secrets Practice Group in the firm's Chicago office.  Mahoney Decl. ¶¶

8, 10.  Mr. Humphrey is a 1997 graduate of the University of Illinois Chicago School of Law.

Mahoney Decl. ¶ 8.  Allstate is seeking to be compensated for Mr. Humphrey's work at the

rates of $430/hour in 2015, $465/hour in 2016 & 2017, $540/hour in 2018 & 2019, and

$615/hour in 2020 & 2021, for a total of $190,820.70.  Id. ¶ 20, Ex. A, C.

While Allstate contends that it is not seeking all of the attorneys' fees and expenses that

it actually incurred in this litigation, it is impossible to determine what is actually excluded from

the Fee Petition.  Thus, Mr. Mahoney attests:

> Other attorneys and professional support staff provided services on this case to conduct
> document review and legal research, among other services necessary for the
> prosecution of Allstate's claims.  Allstate also engaged the services of a vendor to assist
> with the voluminous document review required in this matter.  Allstate has not included
> fees billed for work by those vendors, nor any other attorneys or professional support
> staff outside the core team on this case.

---

[6] Although not mentioned in Mr. Mahoney's Declaration, in two bills Allstate was charged $425/hour for
8.9 hours of Mr. Mahoney's work.  Mahoney Decl. Ex. B at 146, 149.

Mahoney Decl. ¶ 9.  The bills for the vendors are not included in the materials filed with the court and the court has no indication of what tasks these vendors were engaged in or how much they cost.  Therefore, they played no role in this court's evaluation of the work done in connection with this litigation.

A few of the bills appear to have been redacted to exclude time for work done by either other attorneys or professional support staff outside the core team.  However, only a very minimal amount of work appears to have been done by them.  See Mahoney Decl. Ex. B at 97, 100, 105 & 195.  Consequently, the fact that there were additional attorneys involved (minimally) in this case was not considered by this court in assessing appropriate fees.  In sum, Allstate has not provided any description of any of the work done by others, their rates, or any other information which would assist the court in determining if the case was efficiently staffed.

Allstate also contends that it is not seeking time billed to the defense of defendants' tortious interference counterclaim, which was withdrawn.  Mahoney Decl. ¶¶ 10, 11.  These amounts, which were highlighted in the bills submitted, appear to total 10.7 hours of Mr. Mahoney's time for a total of $3,905.50.  See id. ¶ 11, Ex. B at 39, 57, 59, 119.

Finally, Allstate contends that it "incurred significant fees to prepare its Motion for Summary Judgment, respond to Defendants' cross-motion for summary judgment, and prepare a reply and sur-reply in support of Allstate's Motion."  Mahoney Decl. ¶ 18.  Allstate attributes 178.2 hours to these memoranda, and reduced the amount it is seeking to account for briefing "on 'non-core' claims" by 20% for a total "reduction" of $15,395.  Id. ¶ 18, Ex. C.  The non-core

[12]

claims include "those Counterclaims based on Allstate's alleged failure to provide 180 days' notice to Defendants before terminating their Allstate agencies[.]" (Fee Petition at 15).

Allstate asserts that it is seeking fees for the following work: investigating defendants' conduct and drafting the Complaint and Amended Complaint, document production, written discovery, depositions, discovery disputes, summary judgment, and pre-trial preparation. Mahoney Decl. ¶¶ 13-19. However, it has not divided its bills seeking legal fees into these or any other categories.

Allstate is seeking $34,397.66 in costs. Id. ¶ 24. It has divided the costs into the following categories: couriers; filing fees; process servers; travel, lodging, meals; subpoena fees; and deposition and hearing transcripts. Id. Ex. D.

## V. HOURLY RATES

As detailed above, Allstate is seeking compensation for Mr. Mahoney's work at the hourly rates of $365 and $525, and for Mr. Humphrey's work at the hourly rates of $430, $465, $540, and $615. In support of these rates, Mr. Mahoney has attested as follows:

> I hereby certify that the hourly rates charged to Allstate during this litigation have at all times been independently fair and reasonable, and that the amounts billed to and paid by Allstate were and are fair and reasonable. These rates are also fair and reasonable and in line with rates for similarly-credentialed firms in the Boston market, based on prior rulings from this Court and publicly-available reports on average fees in the Boston market, as well as the rates charged by Seyfarth Shaw attorneys in Boston.

Mahoney Decl. ¶ 21. No further details are provided.

As the First Circuit recently explained:

> With respect to fee-shifting, the reasonable hourly rate in any given case "will vary depending on the nature of the work, the locality in which it is performed, the qualifications of the lawyers, and other criteria." United States v. One Star Class Sloop Sailboat Built in 1930 with Hull No. 721, Named "Flash II", 546 F.3d 26, 38 (1st Cir. 2008). For guidance in setting an appropriate rate for a particular attorney's time, courts

look to a constellation of factors, including the rate that the particular attorney "actually charges to clients in the ordinary course of [her] practice" and "data evidencing the prevailing market rate for counsel of comparable skill." Hutchinson [ex rel. Julien v. Patrick, 636 F.3d 1, 16 (1st Cir. 2011)]. "The fee-seeker must carry the burden of establishing the prevailing hourly rate (or schedule of rates) in the community for the performance of similar legal services by comparably credentialled counsel." Id.

Pérez-Sosa, 22 F.4th at 325.  It is "the plaintiff's burden to establish the market rate for comparable services with 'satisfactory evidence.'"  Id. at 326 (citation omitted).  Moreover, "binding circuit precedent allows a district court, when constructing a fee-shifting award, to 'set two separate hourly rates for a particular attorney – one for 'core' tasks like 'legal research, writing of legal documents, court appearances, negotiations with opposing counsel, monitoring, and implementation of court orders' and a lower one for 'non-core' tasks which are 'less demanding,' such as 'letter writing and telephone conversations.'"  Id. at 327-28 (quoting Matalon, 806 F.3d at 638 (additional citations omitted)).

In the instant case, Allstate has not provided any evidence to support its request for the hourly rates it is seeking other than the conclusory assertion quoted above, and the citation to several cases.  It is generally recognized in the First Circuit that the moving party should establish the prevailing hourly rate in the community for comparable legal services by evidence other than their own affidavits.  See United States ex rel. Herman v. Coloplast Corp., No. 11 CV-12131-RWZ, 2021 WL 3036922, at *1 (D. Mass. July 19, 2021) (citation omitted).  See also Vaks v. LumiraDx, Inc., No. CV 18-12571-LTS, 2021 WL 395565, at *1 (D. Mass. Feb. 4, 2021) (in addition to providing the court with a supporting affidavit explaining the hourly rates usually billed for the services of each of the professions involved, moving party provided a "peer report" indicating that the hourly rates charges were comparable to the rates charged by other, similar law firms in the area).  Here, the affidavit itself provides virtually no information.  In

addition, the billing records in the instant case show that the attorneys were charging the full amount for non-core tasks such as scheduling hearings with the court.  See, e.g., Mahoney Decl. Ex. B at 41 (entry of 12/02/16); 44 (entry of 1/4/17); 47 (entry of 1/24/17).  While this court believes that the rates charged are excessive, and that two separate hourly rates should have been charged in this case for "core" vs. "non-core" tasks, the court's analysis is hampered by the fact that the defendants have not made a specific objection to the charged rates.  Thus, the court is left to its own devices to determine the reasonable rate which should be allowed.  See Hoffman v. Packer, 548 F. Supp. 3d 268, 271-72 (D. Mass. 2021) (despite defendant's failure to participate in litigation, court conducts its own analysis and authorizes approximately half the fees requested, finding "160 hours researching and drafting an eighteen-page complaint and 391.4 hours spent researching and drafting their second motion for default" to be "well in excess of what would be considered reasonable for more complex filings").

In the case of Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184 (D. Mass. 2013) cited by Allstate, suit was brought under the ADA challenging the accessibility of hotel rooms for a handicapped plaintiff.  The court awarded $350/hour for the partner's work and $265/hour for the work of an associate.  Id. at 197-98.  In U.S. ex rel Herman, 2021 WL 3036922, also cited by Allstate, the court authorized rates ranging from $360-$500/hour for partners in a False Claims Act case.  Id. at *2 (and authorities cited).  In Gross v. Sun Life Assurance Co. of Canada, 880 F.3d 1, 23 (1st Cir. 2018), cited by Allstate, the court authorized fees of $500 and $375/hour for partners in an ERISA case.  While highly specialized class action cases have recognized that much higher hourly rates may be appropriate, the instant case was (or should have been) a straightforward breach of contract case, where the evidence of the

breach was brought directly to Allstate's attention by disgruntled ABIA employees.  <u>See</u>

<u>Arkansas Teacher Retirement System v. State Street Bank and Trust Co.</u>, 513 F. Supp. 3d 202,

211 (D. Mass. 2021) (also cited by Allstate) (court allows fees of $275 to $365/hour as

requested, though recognizing that Class Counsel rates ranging from $535 to $1000 per hour

for partners was reasonable in complex securities class action).

      In the recent case of <u>Sullivan v. Experian Information Solutions, Inc.</u>, No. 16-11719-MPK,

2022 WL 392848 (D. Mass. Feb. 9, 2022), the court was called upon to assess attorneys' fees in

a case alleging a violation of the Fair Credit Reporting Act.  After reviewing survey data as well

as other decisions, the court found that a rate of $500/hour for a very experienced attorney

was reasonable.  <u>Id.</u> at *4-5.  This court recognizes, as the <u>Sullivan</u> court did, the difficulty of

relying on fees awarded in other cases since fee "determinations are 'intrinsically related' to

the complexities of the case and the record developed by the fee-seeker."  <u>Id.</u> at *5 (and cases

cited).  In the instant case, however, given the dearth of information submitted by Allstate, and

the failure of Allstate's counsel to differentiate in any fashion between core and non-core work,

this court will limit the hourly rates recoverable by Messrs. Humphrey and Mahoney to

$500/hour for those periods when they charged in excess of that hourly rate.

## VI.  <u>HOURS REASONABLY EXPENDED</u>

      As detailed above, under the lodestar approach this court is to determine the number of

hours reasonably expended on the litigation, and exclude hours that are "excessive, redundant,

or otherwise unnecessary."  <u>Matalon</u>, 806 F.3d at 638 (citation omitted).  In the instant case, as

noted above, Allstate has made no attempt to categorize its work in any fashion, other than

providing a total amount it claims was spent on the summary judgment pleadings.  Moreover,

the bills provided are replete with "block billing," i.e. "an industry term used to describe the time-keeping method by which an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." E.E.O.C. v. AutoZone, Inc., 934 F. Supp. 2d 342, 354-55 (D. Mass. 2013) (internal quotation omitted).  As a general statement, each day's activities are listed together, with no attempt to identify how much time was spent for each event.[7]  The use of block billing is disfavored and the court is granted "broad discretion in reducing fee requests" where block billing is used, including "across-the-board global fee reductions as an appropriate remedy for block billing practices."  Id. at 355.  The following constitutes the court's best efforts at determining reasonable hours spent on pursuing Allstate's breach of contract claims.

<u>Events Leading to the Filing of the Complaint</u>

Allstate commenced this action on August 15, 2016.  (Docket No. 1).  It has submitted time records beginning on September 24, 2015, which begin with "analyz[ing] information on Fougre [sic] and violations of Allstate agreement."  Mahoney Decl. Ex. B at p. 12.  As this Court found in its SJ Order, on November 11, 2015, Allstate's attorney sent a letter to Fougere's attorney stating that Allstate believed that Fougere possessed and was using Allstate's confidential information at ABIA, to which counsel replied on January 11, 2016 (apparently inaccurately), that "Fougere has not utilized any customer lists or confidential information of Allstate to solicit clients" and that Fougere would "continue to respect and not disclose any confidential information of Allstate[.]"  (SJ Order at 12).  On July 20, 2016, three former

---

[7] Beginning on June 1, 2020, Mr. Mahoney began to allocate time to specific events.  See Mahoney Decl. Ex. B at 162.  However, he did not continue to do this consistently.  See id. at 167, 171.

employees of ABIA emailed plaintiff's counsel anonymously and informed him that ABIA was using Allstate's confidential customer lists and was soliciting Allstate's customers. (Id. at 12-14). Counsel followed up with these former ABIA employees. (Id.). According to the bills Allstate submitted, drafting of the complaint began on August 1, 2016. Mahoney Decl. Ex. B at 25.

Allstate is seeking $9,301.50 for 21.2 hours of Mr. Humphrey's time leading up to the drafting of the complaint. Id. at 12-24. Defendants argue in a footnote, without explanation, that "[t]hese billing records were prepared prior to the Complaint and should not be included in Allstate's fee petition nor its award of fees, if any, by the Court." (Opp. at 5, n.1). However, this investigation was critical to determining whether the defendants had breached their confidentiality obligations under the EA Agreements. Compensation for pre-suit fees is appropriate where the work was useful and necessary to advance the litigation. Hutchinson ex rel. Julien v. Patrick, 636 F. 3d 1, 15 (1st Cir. 2011). Allstate should be compensated in full for this amount. Therefore, the court authorizes **$9,301.50** for 21.2 hours of Mr. Humphrey's time leading up to the drafting of the complaint.

### Complaint and Preliminary Injunction

Allstate filed its original Complaint against Fougere and Brody-Isbill alleging breach of contract, misappropriation of trade secrets and breach of the DTSA on August 15, 2016, along with an emergency motion for a temporary restraining order (which was granted) and a request for expedited discovery with supporting memoranda and affidavits from the former ABIA employees. (See Docket Nos. 1-9). An Amended Complaint adding ABIA as a defendant and adding claims for violation of Mass. Gen. Laws ch. 93A was filed on August 25, 2016. (Docket No. 11). During this period Allstate also was apparently monitoring ABIA's litigation against its

[18]

former employees.  In addition, Allstate's counsel was in communication with counsel for the defendants, and a joint motion for a preliminary injunction was filed on October 7, 2016, which was allowed by the court on November 22, 2016.  (Docket Nos. 13-14).  Thus, by November 22, 2016, the defendants were (1) "enjoined from, directly or indirectly, accessing, using, possessing or having access to Allstate Confidential Information," (2) "accessing and/or attempting to access any Allstate database or server" and (3) "using and/or accessing the following documents on ABIA's and/or Fougere's databases and servers," namely TU Framingham, TU Auburn, Allstate Framingham, and Allstate Auburn.  (Docket No. 14).  A permanent injunction hearing was originally scheduled for December 14, 2016, prior to which the parties were "authorized to conduct expedited and limited discovery concerning the alleged misappropriation and/or use of Allstate confidential information by defendants[.]"  (Id.).[8]

For the period of August 1, 2016, when the drafting of the complaint began, through November 22, 2016, when the preliminary injunction was entered, Allstate is seeking $37,164 for 44.6 hours of work for Mr. Humphrey and 45 hours of work for Mr. Mahoney.  Mahoney Decl. Ex. B at 25-40.  The defendants contend that "those fees should be reduced by 81.8%, the time spent for preparation of nine of the eleven counts that were dismissed" and then the balance "should be reduced by one-third (0.333), which represents work done with regards to ABIA," for a total amount of $4,224.57.  (Opp. at 5).[9]  While this court agrees that some reduction is appropriate, a one-third reduction from the total amount for this work is sufficient.

---

[8] That hearing was never held.

[9] The defendants calculate that $34,800 of fees were incurred during this period for the preparation of the complaint and injunction.  (Opp. at 5).  Reducing this amount first by 81.8% and then by one-third,

In light of the block billing used, it is impossible to identify how much work was done for each task.  It is clear, however, that at a minimum, additional research was done in connection with the DTSA claims.  See, e.g., Mahoney Decl. Ex. B at 25-26, entries of 8/1/16, 8/4/16, 8/10/16.  In addition, the 93A claim was added in the Amended Complaint.  See, e.g., id. at 28-29, entry of 8/22/16.  The inclusion of counts under the DTSA and Mass. Gen. Laws ch. 93A had considerable impact on the case.  These were the source of Allstate's contention that it was entitled to multiple damages.  This, in turn, resulted in considerable motion practice (discussed infra) challenging the applicability of these statutes to the instant case, raising the question whether the confidential information qualified as trade secrets under the DTSA, and addressing the appropriate standard for damages, including multiple damages.  (See, e.g., Docket Nos. 175, 179, 197, 203, 250, 254, 259).  However, none of these legal issues were needed for Allstate's breach of contract claim.  The inclusion of these claims greatly expanded the litigation, even though they were eventually dropped.  The legal work done in connection with these claims was not interconnected with the breach of contract claim, thereby warranting a reduction in fees.

A reduction in the fees awarded is also appropriate since there is no distinction between core and non-core work by the attorneys.[10]  For example, but without limitation, Mr. Humphrey was apparently responsible for arranging for the inspection of ABIA's computers while Mr.

---

the defendants conclude that "the total amount [of] fees potentially awardable to Allstate [is] $4,224.52."  (Id.).

[10] As noted above, there is no evidence that work routinely done by paralegals was actually done by paralegals in this case.

Mahoney was responsible for proof reading and finalizing documents, all of which would more appropriately be done at paralegal rates.  See, e.g., Mahoney Decl. Ex. B at 27, entries of 8/16/16, 8/11/16.

This court rejects, however, the defendants' argument that the request for fees should be reduced because all claims against ABIA were withdrawn.  The claims against ABIA raised the same legal and factual issues as those brought against Fougere and Brody-Isbill,[11] and the inclusion of ABIA did not affect the scope of the litigation in any significant way.  Therefore, no reduction based on ABIA is warranted.

At this early stage of the litigation, much of the work done was in furtherance of developing the factual record, which was relevant to and necessary for Allstate's breach of contract claim.  After consideration of all these factors, this court will reduce the fees for this period ($37,164) by one-third (1/3) ($12,388), and award Allstate **$24,776** for the work done during the period of August 1, 2016, when the drafting of the complaint began, through November 22, 2016, when the preliminary injunction was entered.  Such a reduction is appropriate to reflect the additional work done in connection with the DTSA and 93A claims, the block billing and the involvement of lawyers at their usual rates in non-core work.

## Forensic Examination of ABIA's Computers

It is the defendants' contention that "Allstate should not be awarded any fees past the date of the filing of the complaint and the obtaining of the preliminary injunction."  (Opp. at 5).

---

[11] The only exception was a claim of interference with advantageous business relations, which Allstate brought against ABIA only.  (Count XI).  However, that claim was withdrawn by Allstate and there is no indication that a significant amount of work was done in connection with it.

The defendants contend that Allstate "mis[led] the Court for years by falsely claiming that the Customer Lists were destroyed and not obtainable by Allstate" when Allstate's billing records show that "these lists were in its possession or accessible by Allstate at the time of the preparation of the Complaint and thereafter." (Opp. at 6). While this court does agree that ideally the litigation should have concluded with the entry of a permanent injunction (based at least in part on the spreadsheets) following a minimal amount of discovery, the fact is that actions undertaken by the defendants contributed substantially to the need for continued litigation and the spiraling costs.

With respect to the confidential information found on ABIA's servers, after the defendants assured Allstate in January 2016 that they would not use confidential information belonging to Allstate (SJ Order at 12), in July 2016 three former employees of ABIA informed Allstate's counsel that Fougere had been using customer information from Allstate and requiring ABIA employees to use this information to contact Allstate customers on ABIA's behalf. (PI Order at 12). These former employees subsequently sent Allstate's counsel portions of files labeled, "Framingham Allstate book of business" and "Allstate Auburn book of business" which were maintained on a restricted Google Drive at ABIA and contained all the types of information specifically identified as confidential information belonging to Allstate in the EA Agreements. (Id.). While the defendants contend that Allstate's search should have ended when the spreadsheets were received, the defendants' subsequent actions in failing to

preserve and produce the information on ABIA's computers legitimately caused Allstate

concern.[12]

The failure of the defendants to fully cooperate with Allstate eventually resulted in a

court order allowing a forensic examination of ABIA's computer by a third-party examiner, and

allowing Allstate to take screen shots of four spreadsheets contained on ABIA's Google Cloud

system, titled, "Allstate Framingham," "Allstate Auburn," "TU Framingham" and "TU Auburn."

(Docket No. 46).  By the time the independent forensic examination was able to be conducted,

after much motion practice caused by the defendants' failure to provide access, the Allstate

Auburn and Allstate Framingham folders had been permanently deleted from the trash folder,

although the TU Framingham and TU Auburn spreadsheets remained.  (PI Order at 13).  The

defendants took the position that the trash folder was emptied automatically and that their

failure to ensure the retention of the spreadsheets was inadvertent.  (See Docket No. 258 at 1).

Allstate countered that it was impossible to determine whether it had been provided with the

"exact same" spreadsheets since it had nothing to compare, and the metadata related to the

destroyed spreadsheets would have contained information relevant to the instant dispute.  (Id.

at 2).  The court ultimately "accepted the defendants' explanation that the destruction of the

spreadsheets was inadvertent, although it was in breach of their obligation to preserve

evidence in this case."  (Id.).  As this court noted in its PI Order, "[w]hether the permanent

deletion of the 'Allstate' folders was intentional or due to the defendants' inattention or

---

[12] Some of the history of the search of ABIA's computer systems is detailed in Allstate's "Motion in Limine No. 9 for an Adverse Inference Instruction Regarding the Spreadsheets Destroyed by Defendants Fougere and ABIA" (Docket No. 212) and related pleadings.

incompetence remains an open question in this litigation." (PI Order at 13). In addition, as a result of the defendants' actions it remained "unclear whether the two sets of documents are just duplicates as the defendants contend, or if there are four distinct lists." (Id.).

It is clear, however, that Allstate's attorneys spent a considerable amount of time arranging for the inspection of the ABIA computers, including a great deal of non-core work which was billed at their usual hourly rate. See, e.g., Mahoney Decl. Ex. B at 45, 51, 53, entries for 1/5/17, 1/6/17, 2/16/17, 3/4/17. In addition, Allstate engaged in extensive motion practice relating to the search of the contents of ABIA's computer up until the very end of the litigation. (See Docket Nos. 30 (1/13/17 Allstate Motion to Preserve Evidence and to Compel Inspection); 49 (6/28/17 Allstate Motion for Rule to Show Cause as to why defendants should not be held in contempt for failure to produce Google drive cloud computing system for forensic imaging); 62 (9/13/17 Allstate Motion for Sanctions for Destruction of Evidence); 212 (6/30/20 Motion in Limine No. 9 for an Adverse Inference Instruction Regarding the Spreadsheets Destroyed by Defendants Fougere and ABIA)). The court ultimately did not find the defendants in contempt or issue sanctions. In addition, the court denied Allstate's motion for an adverse jury instruction (without prejudice) finding that, while "[t]he existence of some customer spreadsheets is very relevant to the issues in this case[,]" Allstate was "not seeking damages based on the usurpation of any specific customers, so the content of either of the two missing spreadsheets (as opposed to the spreadsheets Allstate [had] in its possession) [was] not critical to Allstate's case." (Docket No. 258 at 2).[13]

---

[13] The court also denied the motion because counsel for all parties would need to be witnesses at trial as to the circumstances surrounding the destruction of the spreadsheets. To obviate this problem the court ordered the parties to see if they could agree on a statement to be read to the jury. (Docket No.

While this court understands Allstate's desire to know what was on ABIA's computers, the time spent on this issue greatly exceeded its value to the case.  Allstate's counsel had access to ABIA's former employees who were apparently cooperating with Allstate, and who explained what information had been taken by Fougere and Brody-Isbill.  Counsel had been provided with hard copies of the spreadsheets that had been given to ABIA's employees.  The information that Allstate had was sufficient to establish the defendants' breach of the confidentiality provisions of the EA Agreements.  The facts relating to how the two spreadsheets came to be permanently deleted never changed throughout the course of the litigation.  Moreover, despite the forensic examination, to this court's knowledge no additional confidential Allstate information was found on ABIA's computer.

The court has determined, based on its best estimates given the block billing, that from the time the preliminary injunction issued on November 22, 2016, until the cross-motions for summary judgment were filed on February 13, 2019, Allstate is seeking to recover approximately $42,261.50 in connection with seeking the forensic analysis and related motions, including 50.4 hours of Mr. Humphrey's time, and 50.7 hours of Mr. Mahoney's time.  Mahoney Decl. Ex. B at 41-127.  This amount will be reduced by 60% ($25,356.9) as the time spent was excessive and involved a considerable amount of non-core work.  See Walsh v. Boston Univ., 661 F. Supp. 2d at 105 (court may "remove time that was unreasonably, unnecessarily or

_____

258 at 2).  Allstate ultimately proposed that the jury be informed that the defendants maintain that the deletion of the Allstate Framingham and Allstate Auburn spreadsheets was due to an automatic process initiated by Google, and was inadvertent and unintentional, and that the defendants allege that the deleted spreadsheets are virtually identical to the TU Framingham and TU Auburn which had been produced.  (Docket No. 260-2). If Allstate had agreed early on that the defendants' position would be explained to the jury, without challenge, a great deal of motion practice could have been avoided.

inefficiently devoted to the case") (quotation omitted)).  Therefore, the court will award

**$16,904.60** for the work done in connection with the inspection of the ABIA computers and

related motions through the filing of the summary judgment motions.[14]

**Discovery Leading to Summary Judgment Motions**

During this period, Allstate also had to respond to the defendants' counterclaims, which

raised significant issues relating to the ownership of the confidential information, as well as to

whether Allstate had given appropriate notice in connection with Allstate's termination of the

defendants' EA Agreements.  As detailed above, the counterclaims relating to whether proper

notice of termination had been given are not interrelated with Allstate's breach of contract

claims, so some reduction in fees is appropriate.  (See Fee Petition at 15).  While it is impossible

to determine from the billing records which discovery related to which claim or counterclaim,

Allstate contends that the "overwhelming majority" of the "extensive discovery" taken

"focused on Defendants' retention and use of Allstate's confidential information, and

Defendants' countervailing claims that they had obtained the information from other sources

or that it otherwise did not belong to Allstate."  (Fee Petition at 3).  Mr. Mahoney has attested

that both sides produced extensive documents; both sides filed extensive interrogatories and

document requests; and Allstate had taken six (6) depositions as had the defendants, including

4 of Allstate witnesses.  Mahoney Decl. ¶¶ 14-17.  The docket establishes that both sides filed

---

[14] As discussed infra, while Allstate continued to pursue its request for an adverse jury instruction, these later incurred fees are not compensable since they post-date the ruling on summary judgment which established the defendants' breach of contract, and Allstate has waived its claim for damages so proof of the extent of the defendants' breach, if it was ever relevant, is no longer necessary or interconnected to the breach of contract claims.

motions to compel at various stages of the litigation, some of which were resolved by

agreement and others which were allowed in part and denied in part.  (See Docket Nos. 71, 76,

78, 88, 95, 99, 101, 113).

The bills show that from the time the preliminary injunction issued on November 22,

2016, until the drafting of the cross-motions for summary judgment began on January 2, 2019,

Allstate is seeking to recover $262,524.00, inclusive of the amounts spent in connection with

the forensic review discussed above for 184.4 hours of Mr. Humphrey's time and 455.3 hours of

work done by Mr. Mahoney.  Mahoney Decl. Ex. B at 41-122.  If the maximum rate charged is

reduced to $500/hour, the amount recoverable would be $254,747.50.  Reducing that amount

by the $42,261.50 attributable to the forensic analysis of ABIA's computers and related motions

discussed above, leaves charges of $212,486 relating to discovery prior to the drafting of the

summary judgment motions and related pleadings.

The amount sought will be reduced by 35% ($74,370.10) to account for work done in

connection with issues that are not related to Allstate's breach of contract claim, the fact that

extensive non-core work is included in the bills, the mixed success on the motions to compel

and the block billing, bringing the total down to $138,115.90.  The court is further reducing the

amount paid for the non-forensic accounting discovery to $100,000.  This subsequent reduction

is appropriate where, as here, a substantial amount of the work was undertaken "in an

unsuccessful bid to secure a substantial damage award."  Home Placement Services, Inc. v.

Providence Journal Co., 819 F.2d 1199, 1210-12 (1st Cir. 1987) (after reducing hours sought due

to excessive amount of work done, the court reduced "by half the total number of remaining

hours to reflect the fact that approximately three years of counsels' efforts resulted in a

[27]

recovery by Home Placement of only nominal damages"). The fact that only nominal damages are awarded may be considered in assessing a fee award. Id. at 1210. See also Parker v. Town of Swansea, 310 F. Supp. 2d 376, 398 (D. Mass. 2004) (and cases cited) (result obtained in litigation is an appropriate factor to consider in assessing fees).[15]

Thus, Allstate will be awarded **$100,000** for discovery prior to the drafting of the motions for summary judgment. In this court's view this significant, albeit reduced, award recognizes that a great deal of the discovery was made necessary by the defendants themselves. They raised issues and sought extensive discovery on issues which were ultimately unsuccessful, but which went to the issue of ownership of Allstate's confidential information. Thus, it was directly related to Allstate's breach of contract claim and Allstate is, therefore, entitled to be compensated for this work.

**Cross-motions for Summary Judgment**

According to Allstate's bills, drafting of the motion for summary judgment began on January 2, 2019. Mahoney Decl. Ex. B at 123. The court issued its decision on September 30, 2019. With very few exceptions, during this period, the time billed was spent in connection with filing and responding to cross-motions for summary judgment, including drafting and filing moving briefs, opposing briefs, reply briefs, sur-reply briefs and supporting documentation, as well as responding to a motion by the defendants to disqualify Allstate's counsel. Id. at 123-40.

---

[15] This court does acknowledge Allstate's argument that it was unable to settle the case due to unrealistic demands by the defendants. Not surprisingly, the defendants argue that Allstate's position on settlement was not clearly expressed to them. In any event, while an inability to settle may have required Allstate to continue with the litigation, it still had control over the extent of the discovery it needed to prove a breach of contract claim.

[28]

Allstate is seeking fees totaling $77,083.00 for 68.8 hours of Mr. Humphrey's work and 109.4 hours of Mr. Mahoney's work.[16]  Mahoney Decl. Ex. C.  Reducing these bills to a maximum billable rate of $500/hour results in charges of $74,331.

Allstate has proposed reducing its fees by 20% "to account for claims unrelated to Allstate's confidential information, including those Counterclaims based on Allstate's alleged failure to provide 180 days' notice to Defendants before terminating their Allstate agencies (again, even though Allstate prevailed on this claim)."  (Fee Petition at 15).  This court finds that a further reduction is appropriate as a substantial number of claims addressed in the summary judgment motions were not related to Allstate's breach of contract claims.  While certain billing entries are specific as to the work performed, in general the block billing and general use of generic descriptions of the work done makes it impossible to be any more specific than providing an across-the-board reduction in fees attributable to the summary judgment motions.

As an initial matter, as this court found "[t]he parties' statements of fact, and responses thereto, include[d] many allegations that are extraneous to the issues before the court in connection with the cross-motions for summary judgment, and [were] very argumentative[,]" thereby increasing the burden on the parties and the court in both drafting and resolving the summary judgment motions and related pleadings.  (SJ Order at 4).  In addition, in connection

---

[16] During the period of January 2, 2019 through September 30, 2019, Allstate was billed for 76.7 hours of Mr. Humphrey's work and 124.7 hours of Mr. Mahoney's work. Mahoney Decl. Ex. B at 123-40.  Allstate has calculated that of this amount, Mr. Humphrey spent 68.8 hours on the summary judgment motions and Mr. Mahoney spent 109.4 hours.  Mahoney Decl. Ex. C.  While Allstate lists the value of the 68.8 hours spent by Mr. Humphrey at the rate of $540/hour to be $37,044, the correct amount is $37,152, which is the figure this court will use. Id.

with the summary judgment motions, the parties filed competing motions relating to counsel's

communications with Edward Phelan, Counsel for the Massachusetts Division of Insurance.

These motions were unrelated to the breach of contract issues and are not compensable here.

(Id. at 15-19).

In connection with its motion for summary judgment on defendants' counterclaims,

Allstate raised a number of legal issues that were unrelated to its breach of contract claims, and

not all of its arguments were successful.  As Allstate acknowledges, the issues raised by the

defendants relating to whether they were entitled to the 180-days termination notice was

significant and involved complicated and novel issues of law, although it is not interconnected

with the breach of contract claims.  (SJ Order at 27-30).  In addition, Allstate moved for

summary judgment on the defendants' claim under Mass. Gen. Laws ch. 93A on the

unsuccessful basis that the defendants had failed to plead an injury to consumers.  (Id. at 31-

35).  Thus, a reduction in fees is appropriate in connection with two of the three counterclaims

addressed in the summary judgment motions.

With respect to Allstate's direct claims, it did prevail on its claim that the defendants

misappropriated confidential information belonging to Allstate, and in so doing, defeated a

number of arguments raised by the defendants.  (Id. at 34-43).  However, Allstate's common-

law claim of misappropriation of trade secrets and violation of the DTSA required a separate

analysis, including whether the information constituted trade secrets, and whether the

information had been acquired by improper means – issues not necessary for the breach of

contract claims.  (Id. at 44-50).  Thus, a reduction in fees is appropriate in connection with two

of the three direct claims addressed in the summary judgment motions.

This court has determined that a 35% reduction in the compensable fees sought in connection with the summary judgment motions is appropriate, *i.e.* $74,331-$26,015.85.  While more than half of the legal issues addressed are not interconnected with the breach of contract claims, the majority of the facts are the same.  Therefore, the court awards **$48,315.15** in connection with the summary judgment pleadings.

### Post-Summary Judgment Work

Including the miscellaneous hours spent in trial preparation prior to the issuance of the summary judgment decision, see note 16, supra, Allstate is seeking compensation for 87.8 hours of work by Mr. Humphrey and 358.5 hours of work by Mr. Mahoney work after the summary judgment order issued, for bills totaling $231,592.50.  Mahoney Decl. Ex. B at 141-95. Capping their hourly rate at $500/hour, this comes to $43,900 for Mr. Humphrey's work and $171,198 for Mr. Mahoney's work, for a total of $215,098.  This court will award 10% of these fees (**$21,509.80**) to cover miscellaneous issues, opposing the motion for reconsideration on the issue of all of Allstate's claims of trade secret, including its breach of contract claims (Docket No. 231),[17] and Allstate's motion for a permanent injunction (Docket No. 280), which is not addressed in the bills.[18]  Fundamentally, the only issues remaining following the court's

---

[17] On August 14, 2020, the defendants filed a motion for reconsideration of the court's trade secrets summary judgment ruling based on a new decision from the First Circuit (Docket No. 231).  Allstate filed an opposition on August 28, 2020 (Docket No. 235).  After a hearing on September 30, 2020, the motion was denied by the court on October 2, 2020. (Docket Nos. 243, 245).  While not clear from Allstate's bills, it appears that counsel devoted approximately 10 hours of time in opposing the motion for reconsideration.  See Mahoney Decl. Ex. B at 170-76.

[18] On December 15, 2021, Allstate filed a six-page motion for a permanent injunction.  (Docket No. 280). No other briefing was filed by Allstate on this matter.  The court issued the permanent injunction without a hearing.

Summary Judgment Order related to damages and tort claims – all of which Allstate has

dismissed.  Thus, the work on damages and tort claims were not interrelated to Allstate's

request for nominal damages in connection with its breach of contract claim.

After the court issued its SJ Order, Allstate's efforts were devoted to a second motion

for summary judgment on defendants' 93A claim, on the basis that 93A was not applicable to

the parties' relationship.  (Docket Nos. 175-78, 183-84).  The court had raised this issue in the SJ

Order.  While Allstate prevailed on this motion (Docket No. 195 issued on March 26, 2020), the

legal issues raised in the 93A summary judgment motion are not interconnected with Allstate's

breach of contract claim.

After the SJ Order issued, the only issues remaining were damages suffered by Allstate,

its claims under 93A against Fougere, Brody-Isbill and ABIA, and its claim of tortious

interference with advantageous business relationship against ABIA.  (Docket No. 197).  While

Allstate dropped its 93A claims on April 9, 2020, it notified the court that it intended to proceed

on its tortious interference claim and to seek "a 'willful and wanton' finding against Defendants

with respect to its trade secret misappropriation claims."  (Id. at 1-2).  These issues were hotly

contested, as were all aspects of the trial preparation.  For example, Allstate filed nine (9)

motions in limine (Docket Nos. 204-212) and the defendants filed six (6) motions in limine (in

one document).  (Docket No. 203).  The issue as to whether Allstate was able to state a claim

for damages was the subject of much briefing.  (See, e.g., Defendants' Motion in Limine No. 6

(Docket No. 203); (Docket Nos. 236, 259)).  Allstate's counsel spent a great deal of time

preparing for trial, drafting witness lists and outlines, jury instructions, trial briefs, exhibit lists

and the like.  Nevertheless, by waiving all but its breach of contract claims, and electing to seek

only nominal damages, Allstate rendered all of this work irrelevant to the final resolution of the case.  Had this decision been made by Allstate upon the issuance of the SJ Order, all this work could have been avoided (by the parties and the court) and the outcome would have been exactly the same.  Since the post-summary judgment work was substantially independent of Allstate's claim for breach of contract, an award of 10% of the fees incurred is sufficient.

### Expenses

Allstate is seeking $34,397.66 in expenses, including $20,957.43 for travel, lodging and meals.  Mahoney Decl. Ex. D.  The defendants object to this expense.  (Opp. at 5).  In this case, this court agrees that the defendants should not be charged with such expenses.  Allstate's counsel's law firm has a sizeable office of attorneys in Massachusetts.  The case did not raise such novel issues that the expertise of out-of-town counsel was necessary.  Allstate was free to hire Chicago-based attorneys to bring an action in Massachusetts, but the defendants should not be burdened with that expense.  Here, Allstate has not put forth any "articulable reason for imposing on a local opponent the extra expenses associated with retaining foreign counsel."  Ackerley Communications of Mass. v. City of Somerville, 901 F.2d 170, 171 n.3 (1st Cir. 1990).  Since the other expenses are not in dispute, Allstate will be awarded **$13,440.23** in expenses.

### VII. **CONCLUSION**

For the reasons detailed herein, Allstate's Fee Petition is allowed in the amount of $220,807.05 in fees and $13,440.23 in expenses for a total of $234,247.28.  A final judgment shall enter accordingly.

  / s / Judith Gail Dein  
Judith Gail Dein  
United States Magistrate Judge